UNITED STATES of America, Plaintiff,

v.

DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF the UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Frederick W. Devine, President, John R. Abbatemarco, First Vice President, George J. Albert, Second Vice President, Robert J. Cavanaugh, Secretary–Treasurer, Paschal McGuinness, former President, Irving Zeidman, former First Vice President, Francis J.P. McHale, former Secretary–Treasurer, Anthony Salerno, a/k/a "Fat Tony", Vincent DiNapoli, Louis DiNapoli, Peter DeFeo, Alexander Morelli, a/k/a "Black Alex", Liborio Bellomo, a/k/a "Barney", Defendants.

No. 90 Civ. 5722 (CSH).

United States District Court,
S.D. New York.

Nov. 20, 1991.

Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C. (Robert G. Morvillo, Robert J. Anello, Joel M. Cohen, Sherrie F. Nachman, Thomas A. Arena (not yet admitted), of counsel), Manning, Raab, Dealy & Sturm, New York City (James J.P. Manning, William J. Dealy, John J. Leo, Mark A. Wines, Ronald A. Goldman, of counsel), for defendant Dist. Council of New York City and Vicinity.

Thomas Fitzpatrick, New York City, for defendants Irving Zeidman, Frederick W. Devine, and Francis J.P. McHale.

Dominic F. Amorosa, New York City, for defendant Paschal McGuiness.

Henry Putzel, III, New York City, for defendant Robert Cavanaugh.

Roger S. Hayes, Acting U.S. Atty., S.D. New York, New York City (Marla Alhadeff, Thomas A. Zaccaro, Gideon A. Schor, Asst. U.S. Attys., Martin C. Aronchick, Sp. Asst. U.S. Atty., of counsel), for plaintiff U.S.

## MEMORANDUM OPINION
## AND ORDER

HAIGHT, District Judge:

In this action the government invokes the civil RICO statute, 18 U.S.C. § 1964, to obtain injunctive relief against a labor organization, certain of its present and former officers, and other individuals.

The case is before the Court on certain defendants' motion to dismiss the Supplemental Complaint. For the reasons set forth below, the motion is hereby denied.

## BACKGROUND

The District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("District Council") is a labor organization that represents about 22 local unions in the construction trade industry in New York City and its vicinity. The District Council negotiates collective bargaining agreements, implements and maintains those agreements, handles labor disputes, grievances and arbitrations on behalf of local unions and coordinates labor relations matters with other unions. Supp. Complaint ¶ 6; Affidavit of Robert G. Morvillo Dated November 12, 1990 ("Morvillo Aff.") ¶ 3. The District Council's affiliated local unions ("Local Unions") have voting rights and elect delegates to the District Council based on the number of members in the local. Even when a local member is elected to the District Council, he is paid by the local union.

The District Council oversees a number of trust funds: the New York City District Council of Carpenters Welfare Fund, the New York City District Council of Carpenters Pension Fund, the New York City District Council of Carpenters Vacation Fund, the New York City District Council of Carpenters Annuity Fund, the New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund, the New York City District Council of Carpenters Supplemental Fund and the Retirement and Pension Plan for Officers and Employees of the New York City District Council of Carpenters and Related Organizations ("District Council Benefit Funds"). Supp. Complaint ¶ 8.

The District Council's officers, Frederick W. Devine, John R. Abbatemarco, George J. Albert and Robert J. Cavanaugh, and former officers Paschal McGuiness, Irving Zeidman, and Francis J.P. McHale (the "Officer Defendants") who are defendants in their individual and official capacities, are drawn from the local unions.[1] Defendant Devine, who is now President and who was a Vice President of the District Council since approximately 1986, is also President of Carpenters Local 1456. Defendant Abbatemarco, who is First Vice President of the District Council, is also Vice President and Delegate of Carpenters Local 257. Defendant Albert, who is Second Vice President of the District Council, is also Financial Secretary and Treasurer of Carpenters Local 348. Defendant Cavanaugh, Secretary–Treasurer of the District Council, is also the Delegate of Carpenters Local 740.

Defendant McGuinness, who is also the President of Carpenters Local 608, was the President of the District Council from 1984 to 1991. Defendant Zeidman, who was a Vice President of the District Council from approximately 1985 to 1991, is also the President of Carpenters Local 2155. Defendant McHale, who was the Secretary–Treasurer of the District Council from approximately 1983 to 1991, is also the "Business Agent Emeritus" of Carpenters Local 2287. Until about 1987, he had been the

---

1. When this suit was filed on September 6, 1990 defendant McGuiness was President of the District Council; defendant Zeidman was First Vice President; defendant Devine was Second Vice President and defendant McHale was Secretary–Treasurer. On June 12, 1991, while the defendants' motion to dismiss the complaint was pending, Devine was elected President of the District Council. In addition, defendants Abba-temarco, Albert and Cavanaugh were elected First Vice President, Second Vice President and Secretary–Treasurer respectively. The new officers were sworn in on July 1, 1991. The government then sought and received permission of the Court to supplement the Complaint to add the new officers. *See United States v. District Council*, 90 Civ. 5722 (CSH), slip. op. dated July 24, 1991 at 6, 1991 WL 143507.

Business Agent of Local 2287. Supp. Complaint ¶ 9.

The Supplemental Complaint alleges that defendants Anthony Salerno, Vincent DiNapoli, Louis DiNapoli, Peter DeFeo, Alexander Morelli and Liborio Bellomo (the "Individual Defendants") hold or have held positions in the Genovese Organized Crime Family, a criminal organization affiliated with La Cosa Nostra, or "Mafia," or "Our Thing." Supp. Complaint ¶¶ 11–17.

The government alleges that the District Council has supervisory powers on all matters relating to the local unions. The District Council enters into collective bargaining agreements with employers in the New York City area and the District Council holds and controls the District Council Benefit Funds. The Supplemental Complaint alleges that "the officers of the District Council are entrusted with, and have ultimate power over, the fundamental contractual and statutory rights of the union members." Supp. Complaint ¶ 18.

The plaintiff's Racketeer Influenced and Corrupt Organization ("RICO") claim rests on the allegation that the officers of the District Council have abused their power by taking bribes from employers, converting the collective bargaining agreements into tools of extortion and working with organized crime figures who have profited at the expense of the membership. The government alleges that

by such affirmative misconduct and by their deliberate refusal to exercise their supervisory powers, the officers of the District Council have fostered a regime of corruption, extortion and intimidation at all levels of the union throughout New York City. This regime, as stated below, rests on a pattern of racketeering activity in violation of RICO. Supp. Complaint ¶ 19.

The government alleges that the District Council, its constituent Local Unions and the District Council Benefit Funds (the "District Council Enterprise") constitute an enterprise under Title 18 U.S.C. § 1961(4), which has been engaged in, and activities of which have affected, interstate commerce. Supp. Complaint ¶ 20.

The government's First Claim for Relief, based upon 18 U.S.C. § 1962(b), alleges that from the 1960s to the present,

defendants Anthony Salerno, Vincent DiNapoli, Peter DeFeo, Alexander Morelli and Liborio Bellomo, together with and aided and abetted by defendants Paschal McGuinness, Irving Zeidman, Frederick W. Devine, Francis J.P. McHale, George J. Albert and others have unlawfully willfully and knowingly acquired and maintained, directly and indirectly, an interest in and control of the District Council Enterprise, which has engaged in and the activities of which have affected interstate commerce, through a pattern of racketeering activity as set forth below, in violation of Title 18, United States Code 1962(b) and 2. Supp. Complaint ¶ 21.

The charge of aiding and abetting is based on the allegation that

[e]ach of the current and former District Council officer defendants has aided and abetted each of the racketeering acts set forth below which occurred during his tenure as a District Council officer by, at a minimum, refusing to take any action to redress that racketeering act. The District Council officer defendants have the authority and obligation, both under the applicable union constitution and by-laws and under federal labor law, to investigate and discipline union corruption. Supp. Complaint ¶ 22.

The Supplemental Complaint goes on to allege predicate racketeering acts by the present and past officers of the District Council, paragraphs 23–43, and predicate racketeering acts by officers of the Local Unions, paragraphs 44–76.

The Supplemental Complaint describes additional predicate acts in connection with the government's allegation that it was a further part of the pattern of racketeering activity to delay and affect interstate commerce by extortion, in violation of Title 18 U.S.C. § 1951, by obtaining and attempting to obtain property: (a) in the form of the right of union members to free speech and representation rights of union members as guaranteed by Title 29 U.S.C. § 411; (b) in the form of the right of union members to

loyal and responsible representation by union officers as guaranteed by Title 29 U.S.C. § 501(a); and (c) in the form of the right of union members to loyal and responsible representation by the trustees of the District Council Benefit Funds as guaranteed by Title 29 U.S.C. §§ 1104, 1106. The defendants allegedly carried out this extortion by using actual and threatened force, including fear of physical and economic harm in violation of Title 18 U.S.C. § 1951. The Supplemental Complaint lists acts of violence or threats of violence and economic harm or threats of economic harm. Supp. Complaint ¶ 77(a)–(h).

The government's Second Claim for Relief alleges that the officer defendants and the individual defendants have conspired to violate Title 18 U.S.C. § 1962(b) in violation of Title 18 U.S.C. § 1962(d). The government realleges all of the previous racketeering acts in support of its second claim. Supp. Complaint ¶¶ 78–79.

The Third Claim for Relief alleges that the officer defendants and the individual defendants have unlawfully conducted and participated in the conduct of the District Council Enterprise in violation of Title 18 U.S.C. §§ 1962(c) and 2 through a pattern of racketeering activity consisting of the acts alleged in paragraphs 23–76 of the Supplemental Complaint. Supp. Complaint ¶ 80. The Supplemental Complaint alleges that the current and former officer defendants aided and abetted each of the listed racketeering acts

by, at a minimum, refusing to take any action to redress that racketeering act. The District Council officer defendants have the authority and obligation, both under the applicable union constitution and by-laws and under federal law, to investigate and discipline union corruption. Supp. Complaint ¶ 81.

The Fourth Claim for Relief alleges a conspiracy to violate Title 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the District Council Enterprise. The officer defendants and the individual defendants are alleged to each have committed at least two of the racketeering acts alleged in paragraphs 23–76 of the Supplemental Complaint. Supp. Complaint ¶¶ 82–83.

The Supplemental Complaint requests preliminary injunctions enjoining and restraining the Individual Defendants from participating in any way in the affairs of the District Council or any labor organization; enjoining and restraining the Officer Defendants from committing any racketeering acts or associating with organized crime; appointing a court liaison officer to carry out District Council discipline and review the actions of the Officer Defendants as they relate to the District Council Benefit Funds; and enjoining and restraining the members, officers and employees of the District Council from interfering with the court liaison officer.

The permanent injunctions requested would restrain the Individual and Officer Defendants in the same manner and would also enjoin and restrain any defendants found to have violated § 1962 from participating in the affairs of the District Council or any other labor organization; order new officer elections at the District Council to be conducted by a trustee appointed by the Court; empower the trustee to discipline union members; enjoin and restrain any interference with the trustee; and force any defendants who have violated § 1962 to disgorge all proceeds of those violations. The government also prays for a declaratory judgment that the District Council has been controlled by organized crime and that the costs of any trustee or trustees and of this suit be borne by the defendants.

In November 1990 the District Council and the original Officer Defendants moved to dismiss the original Complaint on the grounds that the original Complaint failed to establish a duty on the part of the District Council officers to redress the alleged violations and discipline Local Unions, violation of that duty constituting aiding and abetting on the government's theory; failed to plead adequately its allegations of aiding and abetting; failed to plead an enterprise; and failed to plead a pattern of racketeering activity. The District Council and the Officer Defendants also moved to

dismiss the original Complaint on the grounds that RICO is unconstitutionally vague and violated the First Amendment. In addition, the District Council and the Officer Defendants moved to strike certain material from the original Complaint.[2]

When the new officers were elected in June 1991, while the motion to dismiss was pending, the government applied for and received leave to supplement the Complaint. The government filed and served the Supplemental Complaint on July 2, 1991. The Supplemental Complaint adds the new officers as defendants and includes new allegations against defendant Albert but otherwise does not differ from the original Complaint.

The District Council has submitted additional briefs supplementing its motion to dismiss. In addition, defendant Robert Cavanaugh has filed a motion to dismiss and joined the previous motions to dismiss. Defendant Abbatemarco has entered into an agreement to obey any orders of this Court and the government has dismissed the Supplemental Complaint against him without prejudice. Defendant Albert resigned his office after being elected and is negotiating a consent judgment with the government. Plaintiff's Memorandum in Opposition to Defendants' Supplemental Motion to Dismiss ("Gov.Supp.Mem.") at 18, n. 13.

The motions to dismiss by the District Council, the Officer Defendants and defendant Cavanaugh (collectively the "Defendants") are fully briefed and ripe for decision.

## DISCUSSION

### I. The Rule 12(b)(6) Motions

Defendants move to dismiss the Supplemental Complaint under Fed.R.Civ.P. 12(b)(6), which provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." The defendants challenge the Supplemental Complaint under Rule 9(b); contest aiding

and abetting liability as a matter of law; attack the pleading of RICO; and dispute the validity of the Supplemental Complaint under the United States Constitution.

### A. The Standard for Civil RICO Pleading

■ In moving to dismiss under Rule 12(b)(6), the defendants argue that regardless of the substantive allegations, civil RICO suits should be judged by the pleading standards of Rule 9(b). The defendants argue that because of the prejudicial impact of the filing of a RICO suit, a civil RICO pleading must be judged by the stricter pleading standards of Fed.R.Civ.P. 9(b). The government replies that unless the underlying conduct sounds in fraud, a RICO suit does not have to comply with Rule 9(b) and only has to comply with Rule 8(a).

The government is correct in arguing that the Supplemental Complaint in this case should be judged by the standards of Rule 8(a). Fed.R.Civ.P. 9(b) provides that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 8(a) provides that pleadings shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Second Circuit has recently held that Rule 9(b) does not on its face govern the pleading of a RICO conspiracy, which should be judged by the standards of Rule 8(a). *See Hecht v. Commerce Clearing House,* 897 F.2d 21, 26 n. 4 (2d Cir. 1990) (*citing Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir.1989) (RICO conspiracy pleading properly judged under Rule 8(a)).

Defendants argue that other courts, some in this district, have held that all RICO suits must comply with the particularity requirements of Rule 9(b). *See Plount v. American Home Assur. Co., Inc.,* 668 F.Supp. 204 (S.D.N.Y.1987) and *Philan Insurance Ltd. v. Frank B. Hall & Co., Inc.,* 712 F.Supp. 339 (S.D.N.Y.1989). However, a close examination of *Philan* reveals that the court there only held that

---

**2.** One of the Individual Defendants, Liborio Bellomo, also moved to dismiss the complaint and joined the motions of the District Council and the Officer Defendants. As the parties have

been in settlement negotiations, the government has not responded to Bellomo's motion and the Court has not discussed it in this opinion.

where predicate acts for RICO sound in fraud, those acts must be pleaded in conformity with Rule 9(b). *Philan*, 712 F.Supp. at 342. The court in *Plount* held that because of the danger to reputation inherent in RICO suits, a civil RICO complaint should be subject to the heightened pleading requirements of Rule 9(b). *Plount*, 668 F.Supp. at 206. However, Judge Sweet took that step because of the "'flood of cases under the RICO label which have nothing at all to do with organized crime as it is understood commonly or was understood by Congress at the time of the enactment of the statute.'" *Id.* (*citing and quoting Terra Resources I v. Burgin*, 664 F.Supp. 82 (S.D.N.Y.1987)). The allegations in this case, which must be taken as true on this motion to dismiss, have a great deal to do with organized crime as it is generally understood and specifically with the influence of organized crime on organized labor.

District courts which have considered the question of the civil RICO pleading standard in the context of labor racketeering and organized crime have held that those complaints should be judged under Rule 8(a). In holding that the government's civil RICO complaint alleging corruption and organized crime influence at the Teamsters union should be judged by the standards of Rule 8(a) and not Rule 9(b), Judge Edelstein said that this type of complaint "is not the typical private civil RICO action which is essentially a fraud claim dressed up as a racketeering action." *United States v. International Brotherhood of Teamsters*, 708 F.Supp. 1388, 1396 (S.D.N.Y.1989). Despite arguments by the defendants that RICO suits carry a special stigma, Judge Glasser of the Eastern District explicitly refused to extend Rule 9(b) to all non-fraud RICO complaints. *See United States v. Bonanno Organized Crime Family*, 683 F.Supp. 1411, 1428 (E.D.N.Y.1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989); *see also Executive Photo v. Norrell*, 756 F.Supp. 798, 801 (S.D.N.Y.1991). At least in the context of a civil RICO case involving organized crime, the holdings in *International Brotherhood of Teamsters* and *Bonanno Organized Crime Family* are more applicable here than those in *Philan* and *Plount*.

The Supplemental Complaint here is more appropriately judged by the standards of Rule 8(a). As the Second Circuit noted in *Hecht*, 897 F.2d at 26 n. 4, Rule 9(b) is facially concerned only with pleadings concerning "fraud or mistake." As the predicate acts here do not concern fraud and are clearly related to organized crime, there is no reason to impose the heightened pleading requirement of Rule 9(b). Accordingly, the Supplemental Complaint in this case should be judged by the notice standards of Rule 8(a).

I now consider the standards governing a motion to dismiss under Rule 12(b)(6). While "[a] complaint's insufficiency under Rule 8(a) may provide the basis for a motion to dismiss under Rule 12(b)(6), Fed. R.Civ.P.," *Bonanno Organized Crime Family*, 683 F.Supp. at 1428, the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Consideration of a motion to dismiss the complaint must focus on the allegations contained on the face of the complaint. *Ryder Energy Distribution v. Merrill Lynch Commod.*, 748 F.2d 774 (2d Cir.1984). "On a motion to dismiss, a court must read the complaint generously, and draw all inferences in favor of the pleader." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989).

The district court should not grant a Rule 12(b)(6) motion unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). "[A] Rule 12(b)(6) motion to dismiss need not be granted nor denied in toto but may be granted as to part of a complaint and de-

nied as to the remainder." *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982).

B. The Duty of The Officer Defendants

■ The Officer Defendants contend that the Supplemental Complaint fails to allege a cognizable legal duty that they violated by "refusing to take any action to redress [the] racketeering act[s]" they allegedly aided and abetted. The Supplemental Complaint alleges that:

The District Council officer defendants have the authority and obligation, both under the applicable union constitution and by-laws and under federal labor law, to investigate and discipline union corruption. Supp. Complaint ¶ 22.

Defendants contend that this allegation is insufficient to establish aiding and abetting liability for the predicate RICO acts. Defendants argue that the allegation fails to establish any affirmative assistance of the acts allegedly aided and abetted and so fails as a matter of law to state a claim. In addition, the defendants maintain that principles of agency and federal labor law prevent a union from being held liable for actions that did not further the interests of the union.

In a civil RICO suit, the criminal standard has been applied in judging aiding and abetting liability. In *United States v. Local 560 of International Brotherhood, Inc., Etc.*, 780 F.2d 267, 284 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986), the Third Circuit held that the district court was correct in applying the criminal test when judging aiding and abetting liability in a civil RICO suit.

■ To convict a defendant for criminal aiding and abetting, " 'it is necessary that a defendant in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by action to make it succeed.' " *United States v. Ginsberg*, 758 F.2d 823, 832 (2d Cir.1985) *(citing and quoting Nye & Nissen Corp. v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949)). Although an aider and abettor need not know all of the details

of a crime in order to be convicted of aiding and abetting it, he must be shown to have known "the nature of the substantive offense he furthers or promotes." *United States v. Sigalow*, 812 F.2d 783, 786 (2d Cir.1987).

The Second Circuit has stated the elements of aiding and abetting as:

To convict a defendant of aiding and abetting the government must prove (1) commission of the underlying crime, (2) by a person other than the defendant, (3) a voluntary act or omission by the person charged as an aider and abettor, with (4) the specific intent that his act or omission bring about the underlying crime.

*United States v. Zambrano*, 776 F.2d 1091, 1097 (2d Cir.1985) (citation omitted). The government has alleged numerous acts of racketeering committed by persons other than the Officer Defendants and these allegations, if proved, satisfy the first two elements of aiding and abetting. The Officer Defendants dispute the omission element and the specific intent element. The question is whether the government has adequately alleged a duty that the Officer Defendants violated by omitting to take action.

■ The defendants argue that since the Supplemental Complaint accuses the officer defendants of failing to redress racketeering acts, it improperly attempts to hold them criminally liable for aiding and abetting criminal acts that were already complete. "A person cannot be found guilty of aiding and abetting a crime that already has been committed." *United States v. Shulman*, 624 F.2d 384, 387 (2d Cir.1980). But the allegation of failure to redress appears to envision remedial action by the Officer Defendants at the time crimes were being committed. The pleading would also embrace proof of failure to redress ongoing violations. In neither of these situations does the government accuse the Officer Defendants of aiding and abetting completed crimes.

The government's aiding and abetting theory requires determination of whether there has been an omission and whether

that omission was made with specific intent. In *Local 560,* the defendants argued that while the union's Executive Board might have violated their fiduciary duties, nothing they had done could constitute criminal intent. As the Third Circuit held in affirming the imposition of aiding and abetting liability, "the district court simply recognized that, if an individual fails to act when he has an affirmative duty to do so, negative inferences concerning his intent can be drawn from this inaction." *Local 560,* 780 F.2d at 284.

■ Courts consider the legal duty of a defendant in determining whether his conduct constitutes aiding and abetting. In *Armstrong v. McAlpin,* 699 F.2d 79, 92 (2d Cir.1983), the Second Circuit upheld the dismissal of aiding and abetting allegations against a trustee where "it had neither the power nor the duty to pass upon the merit or frequency of investments. In the absence of such a fiduciary duty, a failure to disclose churning activity would lead to liability only if the inaction was knowing and with conscious intent to aid the fraud." *Id.*

This Court has held that the duty of union officers to act in a fiduciary capacity forms the basis for aiding and abetting liability. In *International Brotherhood of Teamsters,* 708 F.Supp. at 1401, Judge Edelstein said, "[e]ach defendant officer is a fiduciary with respect to the Union members. They have a duty to disclose and remedy wrongdoing by the IBT." Although he did not state the basis for this duty, Judge Edelstein refused to dismiss the complaint on a challenge to the pleading of a failure to act as a basis for aiding and abetting liability.

■ While the defendants in this case vigorously deny that the Constitution and By–Laws of the District Council give them any legal duties to investigate corruption,[3] there can be no dispute that federal labor law does impose such a duty. Title 29 U.S.C. § 501(a) provides:

> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the

---

**3.** A threshold question is whether the Complaint, by referring to the Constitution and By–Laws of the District Council, has incorporated those documents by reference so that they can be considered on this motion to dismiss. The government states that the By–Laws were not incorporated by reference and the defendants respond that they were. *See* Letter of Assistant United States Attorney Marla Alhadeff Dated March 8, 1991 and Letter of Robert G. Morvillo, Esq. Dated March 8, 1991.

The Second Circuit has held that on a motion to dismiss, the district court should only consider allegations on the face of the complaint. Documents outside of the complaint can be considered if they are attached as exhibits or incorporated by reference, *see Cosmas,* 886 F.2d at 13, but if additional material is considered the motion to dismiss should be converted to a motion for summary judgment. *See Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir. 1991). However, the Second Circuit has considered a prospectus that was not attached to the complaint and was only given "limited quotation" in the complaint, because it declined "to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference." *I. Meyer Pincus & Assoc., P.C. v.*

*Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir. 1991); *see Kramer,* 937 F.2d at 774 (district court may consider public documents filed with S.E.C.). Since the main problem with considering documents outside the complaint on a motion to dismiss is lack of notice to the plaintiff, "[w]here plaintiff has actual notice of all of the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Industries, Inc. v. Sum Holdings L.P.,* 949 F.2d 42 at 48 (2d Cir.1991).

In the case at bar, the government specifically referred to the constitution and by-laws in the Complaint which, in addition to federal labor law, form the basis for the alleged duty to investigate corruption at the District Council. In its brief in opposition to the defendants' motion to dismiss, the government quotes extensively from the By–Laws of the District Council in arguing that the officers of the District Council violated legal duties and hence aided and abetted corruption at the union. Gov.Mem. at 18–20. The government, having cited explicitly to the By–Laws and having quoted from them in their brief, cannot now assert that the By–Laws should not be considered. *Cortec,* at 48. Consequently, the Court will consider the By–Laws but does not convert this motion to dismiss into a motion for summary judgment.

special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of any adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

Part (b) of that section gives labor organization members a right of action for violations of § 501(a) and part (c) imposes criminal penalties on any labor official who

unlawfully takes the monies of a labor organization.

■ Thus, 29 U.S.C. § 501(a) imposes a fiduciary duty on officials of labor organizations which even their own governing instruments cannot waive.[4] The defendants here are not charged with aiding and abetting violations of § 501 but rather mostly with violations of Title 29 U.S.C. § 186(b)(1). That section, a part of the Labor Management Relations Act of 1947, places restrictions on financial transactions with union officers. Section 501(a) was enacted as part of the Labor–Management Reporting and Disclosure Act of 1959. But the "positions of trust" held by union officers, which Congress explicitly expressed in the later statute, are implicit in the conduct governed by the earlier one. In short, the Officer Defendants' fiduciary duties, imposing on them a duty to act, satisfy the third element of aiding and abetting set forth in *Zambrano*.[5]

The Court's holding today is that such a duty exists as a matter of law but the government's proof will of course have to show how the Officer Defendants failed to act as well as the other elements required to establish aiding and abetting liability.

---

**4.** The government argues that the Judge Sand's March 13, 1991 decision in *United States v. Local 1804–1, International Longshoremens Association,* 90 Civ. 963 (LBS) (S.D.N.Y.) means that the Court should delay a determination of whether the Officer Defendants could be held liable for failure to redress the actions of other union officials. *See* Letter of Assistant United States Attorney Marla Alhadeff Dated March 18, 1991. The defendants argue that *ILA* is distinguishable because it concerned wrongdoing by fellow officers of the same union as opposed to the case at bar where the alleged wrongdoing is by officers of the constituent Local Unions. *See* Letter of Robert G. Morvillo, Esq. Dated April 8, 1991.

At the close of discovery in *ILA* two defendants moved for summary judgment on the question of whether union officials have a duty to remedy misconduct by other officials. Citing to *Local 560, supra,* Judge Sand refused to rule on the point. Instead, he wrote, "we defer ultimate resolution of that question until such time as we have a full record of what precisely these defendants knew and what actions they failed to take." *ILA,* slip. op. at 2.

The Court declines the government's suggestion to wait to decide the question. Such a duty

exists as a matter of law but the facts must be developed to demonstrate if any defendant at bar breached the duty.

**5.** The Officer Defendants argue that the standard formulations of the aiding and abetting standard should be augmented by requiring the government to prove that the defendants gave "substantial assistance" to the commission of the alleged crimes. *See Armstrong v. McAlpin,* 699 F.2d at 91 and *Morin v. Trupin,* 711 F.Supp. 97, 113 (S.D.N.Y.1989).

In *Armstrong v. McAlpin,* 699 F.2d at 91, the Second Circuit held, "[i]naction on the part of the alleged aider and abettor obviously should not be treated as substantial assistance, except when it was designed intentionally to aid the primary fraud or it was in conscious and reckless violation of a duty to act." (citations omitted). In *Morin,* 711 F.Supp. at 113, this Court declined to impose aiding and abetting liability for inaction were the defendant lawyers did not have any duty to disclose wrongdoing by clients.

Even if the defendants are judged by the "substantial assistance" standard, the government adequately alleges that the Officer Defendants have violated a duty to act imposed by federal labor law.

## II. The Pleading of RICO

The next question is whether the Supplemental Complaint gives the Officer Defendants adequate notice under Rule 8(a) of the aiding and abetting they are accused of.

As Judge Glasser wrote of an extensive civil RICO complaint filed in the Eastern District, it must be discernible "from the Amended Complaint which defendants are alleged to have aided and abetted which predicate acts or in what manner they aided and abetted the acts." *Bonanno Organized Crime Family*, 683 F.Supp. at 1429. In directing the amendment of a complaint this Court has said, "[p]laintiffs, in amending their complaint, are directed to allege with supporting factual allegations how each of the individual ... [d]efendants participated as an aider and abettor in the requisite two predicate acts." *Laterza v. American Broadcasting Co.*, 581 F.Supp. 408, 413 (S.D.N.Y.1984). The government must establish individual actions by defendants that form violations of RICO and not simply state that membership in a group is sufficient to find predicate acts. "The focus of Section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d)." *United States v. Persico*, 832 F.2d 705, 714 (2d Cir.1987), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988).

Plaintiff's First Claim for Relief alleges that defendants violated Title 18 U.S.C. § 1962(b). To establish a violation of RICO cognizable in a civil action, the plaintiff:

> must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

*Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *see Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir.1990). "A defendant's aiding and abetting the commission of a predicate act may constitute a predicate act itself." *Bonanno Organized Crime Family*, 683 F.Supp. at 1428 (citations omitted). The defendants have challenged the pleading of the predicate acts, the District Council Enterprise and the pattern of racketeering activity.[6]

### A. Predicate Acts

The Supplemental Complaint alleges that the predicate acts by the Defendants fall into three categories: illegal activities that have taken place at the District Council itself; illegal activities that have taken place at the Local Unions; and extortion of union members' rights at both the District Council and Local Union level, in violation of the Hobbs Act, 18 U.S.C. § 1951. The Officer Defendants have challenged all three categories of predicate acts. In the following sections the Court examines the predicate acts in each category to determine if they are chargeable to the Officer Defendants.

### 1. Acts at the District Council Level

The Officer Defendants argue that the Supplemental Complaint fails to allege with sufficient particularity that the officer defendants aided and abetted the listed RICO predicate acts. They make that argument under Rule 9(b), which I have concluded does not govern this pleading. Nonetheless, the argument may legitimately be made within the context of Rule 8(a) notice pleading.

The Supplemental Complaint alleges that:

> [e]ach of the District Council officer defendants has aided and abetted each of the racketeering acts set forth below which occurred during his tenure as a

---

**6.** While the government pleads violations of § 1962(b) and (c) in support of its § 1964 action, the Defendants focus on the First Claim for Relief and challenge the elements of the RICO claim under § 1962(b). As these elements are applicable to all sections of RICO, each element is considered in this opinion but each Claim for Relief is not separately evaluated.

District Council officer by, at a minimum, refusing to take any action to redress that racketeering act.

The defendants argue that this allegation fails to state how or when each defendant is supposed to have aided and abetted each predicate act or even that the defendants knew about these predicate acts. Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint ("Def. Mem.") at 35.

■■■ The government responds that each of the Officer Defendants is accused of participating in a RICO enterprise, not just by aiding and abetting, but as principals. The Supplemental Complaint alleges that the Individual Defendants "together with" the Officer Defendants have acquired an interest in the District Council Enterprise "through a pattern of racketeering activity as set forth below." Supp. Complaint ¶ 21. The Supplemental Complaint alleges that the Officer Defendants received payoffs in violation of the Taft–Hartley Act: McGuiness from nine employers (Supp. Complaint ¶¶ 23–31; Zeidman from two employers (*Id.* ¶ 32); Devine from four employers (*Id.* ¶ 35–38) and McHale from one employer on numerous occasions (*Id.* ¶ 39). In addition, the Supplemental Complaint alleges that Devine received illegal payoffs in connection with the District Council Benefit Funds in violation of Title 18 U.S.C. § 1954. Supp. Complaint ¶¶ 33–34. These allegations are then specified as predicate acts.[7]

Paragraphs 23–39 of the Supplemental Complaint adequately allege the required two predicate acts against each named Officer Defendant and they are sufficient to satisfy the predicate act element as to each Officer Defendant.

The Defendants' motion disregards these direct allegations of misconduct and instead focuses on paragraph 22 of the Supplemental Complaint which accuses the defendants of aiding and abetting the racketeering acts listed in paragraphs 40–76 of the Supplemental Complaint.

■■■ Paragraph 40 of the Supplemental Complaint alleges that one Arthur Giangrande participated in the pattern of racketeering activity by virtue of an illegal payoff scheme for which he was ultimately convicted. The Supplemental Complaint alleges that Giagrande was an officer of District Council from 1984 to 1986 but does not allege that the Officer Defendants aided and abetted these crimes. Since I have concluded that a failure to act in accordance with their fiduciary duties can form the basis for aiding and abetting liability for the Officer Defendants, the allegations in paragraph 40 are adequate for the purposes of Rule 8(a) notice pleading. The Officer Defendants are notified of the crimes they are alleged to have aided and abetted and are able to prepare their defense. The government will of course have to prove all of the elements of aiding and abetting at trial.

■■■ Paragraph 41 of the Supplemental Complaint alleges that one Theodore Maritas, while President of the District Council, and defendant Vincent DiNapoli participated in an illegal payoff scheme in connection with the District Council. This allegation is adequate to form the basis of a predicate act by Vincent DiNapoli and that the Officer Defendants aided and abetted this scheme.

Paragraph 42 is not an allegation of a predicate act but merely reports the result

---

7. While defendant Albert is named in the Supplemental Complaint at paragraphs 57–59, the allegations against him have not been analyzed because he has resigned his post and is in negotiations with the government. Gov.Supp.Mem. at 18, n. 13. Defendant Abbatemarco has entered a consent decree with the government.

Defendant Cavanaugh, who is not named in the predicate acts, seeks to dismiss the Supplemental Complaint because there are no allegations against him and joins the motion of the District Council. *See* Memorandum of Defen-

dant Robert J. Cavanaugh at 2–4. However, the government states that Cavanaugh is a nominal defendant who must be included to ensure effective relief. *See* Gov.Supp.Mem. at 17–23; *see also* Note 10, *infra.*

The Supplemental Complaint will not be dismissed against Cavanaugh because he is a District Council officer whose presence in this suit is required to effectuate the relief, if any, this Court may grant. *See International Brotherhood of Teamsters,* 708 F.Supp. at 1402.

of an Eastern District prosecution of Theodore Maritas and Vincent DiNapoli.

■ Paragraph 43 of the Supplemental Complaint alleges that one Thomas Mazziotta, while an employee of the District Council Benefit Funds, unlawfully received things of value in exchange for actions Mazziotta took concerning the Benefit Funds. This allegation is adequate to charge the Officer Defendants with aiding or abetting this crime.

The allegations in paragraphs 39–43 are adequate to support the pleading of aiding and abetting of these acts by the Officer Defendants. The government has alleged a duty a breach of which forms one element of aiding and abetting liability. The allegations of breach of duty plus the specific acts defendants are alleged to have aided and abetted give the Officer Defendants adequate notice of the claims against them for the purposes of Rule 8(a) pleading. *See International Brotherhood of Teamsters,* 708 F.Supp at 1401 (*citing Local 560,* 780 F.2d at 284). The government has pled with sufficient specificity how these acts were aided and abetted.

### 2. Acts at the Local Union Level

■ Paragraph 44 of the Supplemental Complaint alleges that:

With respect to the collective bargaining agreements between the District Council and employers, the officers of the District Council initially delegate their oversight and enforcement duties to the officers of the District Council's constituent Local Unions. In performing this function, Local officers must report back to the officers of the District Council, who retain ultimate responsibility for the enforcement of the membership's contractual and statutory rights. Together with the officers of the District Council, the Local Union officers have systematically traded the membership's rights in ex-

change for illegal payoffs and have used the threat of labor problems to coerce compliance with their demands. These acts, as alleged below, form part of the pattern of racketeering activity by which defendants have maintained their interest in and control of the District Council.

Paragraphs 45–76 then describe illegal acts by various officers of Local Unions in the District, mostly involving the extorting of payoffs from employers in violation of 29 U.S.C. § 186 and 18 U.S.C. § 1951. Supp. Complaint ¶¶ 45–76.

The context of the allegations in paragraph 44 that the District Council defendants acted "together with" the officers of the local unions differs from the comparable allegation in paragraph 21. Some of the racketeering acts listed after paragraph 21 include direct acts by the officer defendants. *See* Supp. Complaint ¶¶ 23–39. The racketeering acts listed after paragraph 44 do not mention the Officer Defendants and instead allege wrongdoing by individual officials of the union locals. The government evidently intends that the general aiding and abetting allegation in paragraph 22 will apply to each of the racketeering acts listed in paragraphs 45–76.

Although paragraphs 45–76 do not name the Officer Defendants, or accuse them of any wrongdoing, those paragraphs survive as predicate acts because the Officer Defendants are alleged to have aided and abetted the racketeering acts. The duty of District Council officials to supervise the affairs of the Local Unions forms the basis for aiding and abetting the allegations contained in paragraphs 45–76. *See International Brotherhood of Teamsters,* 708 F.Supp. at 1401 (*citing Local 560,* 780 F.2d at 284).[8] Those paragraphs satisfy the notice pleading standards of Rule 8(a).

### 3. Hobbs Act Allegations

Paragraph 77(a)–(h) alleges that all defendants, Individual and Officer, extorted

---

**8.** In *Teamsters* Judge Edelstein relied in part on allegations in the complaint that "the lack of knowledge of particular officers could only have resulted from conscious avoidance of the facts." *Id.* 708 F.Supp. at 1401. While the Supplemental Complaint at bar contains no specific allegations of conscious avoidance, the differ-

ence is not significant for Rule 12(b)(6) analysis. Conscious avoidance is fact specific and permits, while not requiring, inferences of guilty knowledge and intent. It arises from proof at trial. The possibility of such proof in this case must be factored in under *Conley v. Gibson, supra.*

the rights of union members to free speech and participation in union affairs and loyal and responsible representation by union officers. Paragraph 77 alleges:

It has further been part of this pattern of racketeering activity that the defendants named in paragraph 21 above, unlawfully, willfully and knowingly did obstruct, delay and affect commerce and the movement of articles and commodities in commerce by extortion, as these terms are defined in Section 1951 of Title 18, United States Code, in that they obtained and attempted to obtain property in the form of the right of labor organization members to free speech and democratic participation in union affairs as guaranteed by Section 411 of Title 29, United States Code; to loyal and responsible representation by their union officers as guaranteed by Section 501(a) of Title 29, United States Code; and to loyal and responsible representation by the fiduciaries of the District Council Benefit Funds as guaranteed by Sections 1104 and 1106 of Title 29, United States Code. The defendants obtained and attempted and conspired to obtain these rights from the members of the District Council with their consent, induced by the wrongful use of actual and threatened force, violence and fear, including fear of physical and economic harm; that is, the defendants did create and attempt and conspire to create a climate of intimidation and fear which demonstrated that resistance to their regime would be punished by physical and economic harm. This extortionate activity, all of which constitutes a violation of Section 1951 of Title 18, United States Code, has included the following:

(a) The defendants named in paragraph 21 above committed the acts of racketeering activity set forth in paragraphs 23–76 above, which paragraphs are realleged as if fully set forth here.

Subparagraph (b) of paragraph 77 alleges and lists several acts of violence towards officers of the District Council and Local Unions and Local Union members which are part of the campaign of extortion alleged at the start of paragraph 77. Sub-paragraph (c) of paragraph 77 alleges that "[o]rganized crime has maintained a powerful presence within the District Council." Subparagraph (c) then list instances where the Officer Defendants and other District Council and Local Union officials have associated with organized crime figures, including the Individual Defendants. Subparagraph (d) alleges that Local Union members have been unable to participate in union affairs and lists instances of misconduct at the meetings of several Local Unions. Subparagraph (e) alleges that Local Union officers have abused the hiring hall system and reports that defendant McGuiness was found to have concealed hiring hall records.

Subparagraph (f) alleges that:

The defendant officers of the District Council have consistently refused to take action to rid the District Council of corruption. They have permitted corrupt officials to remain in office, failed to investigate charges of corruption, and failed to redress proven instances of corruption. Although corruption has often been publicly demonstrated, the District Council officers have refused to take remedial measures. Examples of such public demonstrations of corruption include the following:

(i) In the numerous indictments and prosecutions set forth in paragraphs 23–76 above, widespread District Council-related corruption was publicly alleged and proven.

The subparagraph goes on to list several public instances of revelation of corruption at the District Council, including reports by various commissions.

Subparagraph (g) alleges that the Officer Defendants have refused to respond to complaints from union members and employers about corruption. The subparagraph alleges that the Officer Defendants have intimidated those who have complained or ignored them completely and that the officer Defendants have opposed the efforts of law enforcement officials to take action on corruption.

Subparagraph (h), the last allegation in paragraph 77, alleges that Union officers have used their positions improperly to reward themselves, their relatives and their associates.

■■■ Title 18 U.S.C. § 1951(a), in relevant part, provides:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

. . . .

(2) the term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

The Hobbs Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence." *Stirone v. United States*, 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). The Second Circuit has held that the property extorted does not have to be tangible or physical but can be as amorphous as the right to solicit business in an area. *See United States v. Tropiano*, 418 F.2d 1069, 1077 (2d Cir.1969), *cert. denied*, 397 U.S. 1021, 90 S.Ct. 1258, 1262, 25 L.Ed.2d 530 (1970). The rights of union members to participation in union affairs and loyal and responsible representation have been explicitly held to be "property" rights for purposes of the Hobbs Act. In *Local 560*, 780 F.2d at 281–2, the Third Circuit held that the union "membership's intangible property right to democratic participation in the affairs of their union is properly considered extortable 'property' for purposes of the Hobbs Act."

Defendants argue that union member's rights are not property that can be extorted under the Hobbs Act and that even if such rights are property, the government fails to allege adequate facts to support a violation of the Hobbs Act. Def.Mem. at 70. Defendants contend that the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 356, 107 S.Ct. 2875, 2879, 97 L.Ed.2d 292 (1987), that rights to good government are not property rights under the mail fraud statute, 18 U.S.C. § 1341, means that union members' rights to representation and participation are not property for purposes of the Hobbs Act. Defendants also argue that the Court's decision in *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), while recognizing the property nature of intangible items, also held that the mail and wire fraud statutes, §§ 1341 and 1343, only apply to rights that have the normal attributes of private property. The Defendants then argue that these interpretations of the word "property" should apply to that word in the Hobbs Act. There is little authority for the proposition that *McNally* and *Carpenter* even apply to the Hobbs Act. The Officer Defendants essentially argue that because the statutes all use the word "property," they should be interpreted in the same way. Def.Mem. at 72.

Even were the *McNally* and *Carpenter* decisions to apply to the Hobbs Act, they are consistent with finding the rights of union members to be property. *McNally* only refused to make the right to good government an intangible property right. *See* 483 U.S. at 356, 107 S.Ct. at 2879; *see also Town of West Hartford*, 915 F.2d at 102 (protesters' interference with town's operations not extortion of property for purposes of the Hobbs Act). *Carpenter* reaffirmed that certain intangible rights, like confidential business information, are property for purposes of the wire fraud statute. The Supreme Court held that "*McNally* did not limit the scope of § 1341 to tangible as distinguished from intangible property rights." *Carpenter*, 484 U.S. at 25, 108 S.Ct. at 320. As Judge Edelstein

held in *International Brotherhood of Teamsters,* union members' rights are "more akin to the intangible rights held protectible as property in *Carpenter* than the rights held not to be protectible in *McNally.*" 708 F.Supp. at 1399.[9] The rights of members of the District Council to democratic participation and loyal representation are property rights for purposes of the Hobbs Act.

■ In addition to challenging the definition of property, the Officer Defendants argue that the Supplemental Complaint fails to adequately allege extortion. The applicability of the Hobbs Act depends on "whether the statutorily identified means ('actual or threatened force, violence or fear') have been put to 'wrongful use,' *i.e.,* have been employed to obtain property to which 'the alleged extortionist has no lawful claim.'" *United States v. Clemente,* 640 F.2d 1069, 1076 (2d Cir.) (*citing and quoting United States v. Enmons,* 410 U.S. 396, 400, 93 S.Ct. 1007, 1010, 35 L.Ed.2d 379 (1973)), *cert. denied,* 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981).

Paragraph 77 adequately alleges that the Officer Defendants participated in the extortion of union members' rights. The racketeering acts previously alleged to have been committed by the Officer Defendants are adequate to sustain the allegations of extortion in paragraph 77. Those allegations against the Officer Defendants include numerous instances of payoffs from employers, and support the government's Hobbs Act theory against the Officer Defendants.

■ Several subparagraphs of paragraph 77 list acts not attributed to these defendants. Nevertheless, they are properly included in the pleading. The climate of fear and violence alleged in paragraph 77 is material to the government's Hobbs Act theory. Subparagraph (b) alleges that acts of violence have occurred against those who oppose the existing state of affairs at the District Council and the Local Unions. Subparagraph (c) alleges that the Officer Defendants have associated with organized crime figures and appointed organized crime figures to union positions. These kind of actions can create the kind of indirect fear that has been held to constitute extortion under the Hobbs Act. *Local 560,* 780 F.2d at 283. In particular the appointment of organized crime figures can create an atmosphere of intimidation that aids the extortion of union member's rights. *Id.* at 286.

■ The Hobbs Act extortion alleged in the Supplemental Complaint qualifies as predicates acts for the purpose of civil RICO liability. When Hobbs Act violations are inextricably linked to the "enterprise" that is the heart of the RICO allegation, the Hobbs Act extortion is a predicate act for purposes of RICO. *United States v. Tillem,* 906 F.2d 814, 822 (2d Cir.1990). The Supplemental Complaint alleges that the defendants extorted union member's rights as part of the District Council Enterprise and the Hobbs Act violations are predicate acts by the Officer Defendants named.[10]

---

**9.** Moreover, in 1988 Congress overruled *McNally* by enacting 18 U.S.C. § 1346, which ensures that mail fraud encompasses "scheme[s] ... to deprive another of the intangible right of honest services." *See United States v. Bortnovsky,* 879 F.2d 30, 39 (2d Cir.1989).

**10.** The District Council argues that under the principles of agency law governing the liability of a union for its officers' conduct, the complaint fails to allege a basis for holding the union responsible for the actions of its officers. The District Council relies on cases holding the union cannot be held responsible for the actions of agents acting outside the scope of their employment. The District of Columbia Circuit has defined the situation where a union can be held liable as follows:

where union officials act within the general scope of their actual authority to conduct union business, and where their actions can be understood to further the union's interests, the union is responsible for the officials' unlawful acts.

*Local 1814 Int. Longshoreman's Assoc. v. N.L.R.B.,* 735 F.2d 1384, 1397 (D.C.Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). The District Council argues that even if there were illegal acts by its officers that those acts in no way benefitted the union. Def. Mem. at 29.

The government responds that the District Council is not charged with violating RICO but rather is a nominal defendant included so that appropriate relief may be granted. Indeed, the

## B. Racketeering Enterprise

The Defendants contend that the plaintiff has failed to adequately allege an association-in-fact enterprise that the Officer Defendants have conducted through a pattern of racketeering activity. Relying on *United States v. Porcelli*, 865 F.2d 1352, 1364 (2d Cir.), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989), the Defendants argue that the government has failed to plead an enterprise because it has included entities which are not an "integral part" of the racketeering activity. Defendants particularly attack the inclusion of the Local Unions and the Benefit Funds in the District Council Enterprise. Def.Mem. 47–49.

■ The Supplemental Complaint alleges that "the District Council, its constituent Local Unions, and the District Council Benefit Funds have constituted an enterprise (the 'District Council Enterprise')." Title 18 United States Code Section 1961(4) defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The Second Circuit has concluded that the definition of enterprise was designed to be as broad as possible.

*See United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir.) (*en banc*), *cert. denied*, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989). "[A] racketeering enterprise may consist of an association of separate legal entities." *United States v. Stolfi*, 889 F.2d 378, 381 (2d Cir.1989) (*citing United States v. Huber*, 603 F.2d 387, 393–94 (2d Cir. 1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)). The relationships and activities of separate entities should be considered in determining which entities are part of the enterprise and which are not. *See Porcelli*, 865 F.2d at 1363–64.

As for the Benefit Funds, an Officer Defendant, Devine, is alleged on two separate occasions while a trustee of the Funds to have received and solicited things of value because of his actions and decisions concerning the Funds. Supp. Complaint ¶¶ 33–34. In addition, one Thomas Mazziotta, an employee of the Funds although not a named defendant, is alleged to have engaged in comparable conduct. Supp. Complaint ¶ 43.

■ While entities are not properly included in a RICO enterprise if they are "not an integral part of [the] fraudulant

---

Supplemental Complaint states that the District Council is a nominal defendant. Supp. Complaint ¶ 5. The government represents that the District Council has been included not because it is liable under RICO but because it has been a victim of RICO. Gov.Mem. at 33. The government relies on the provisions of Fed.R.Civ.P. 19(a) for the proposition that a party should be joined if "in his absence complete relief cannot be accorded among those already parties."

The District Council now argues that by adding the new officers to the original Complaint when they were elected, the government has changed its legal theory so that the District Council is corrupt no matter what officers the members elect. Memorandum of Defendant District Council In Support of Its Motion to Dismiss the Supplemental Complaint ("Def. Supp.Mem.") at 7–12. The government reiterates its position that the District Council is included as a nominal defendant because it is a victim of corruption and must be included for effective relief. Gov.Supp.Mem. at 7; *See United States v. Local 560, International Brotherhood of Teamsters*, 581 F.Supp. 279, 337 (D.N.J.1984), *aff'd*, 780 F.2d 267 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986).

The District Council argues that because the present leadership includes only one of the previous four officers, the government has accomplished much of the relief it seeks and that the District Council no longer needs to be a part of this action. Reply Memorandum of Defendant District Council In Support of Its Motion to Dismiss the Supplemental Complaint ("Def.Supp.Reply Mem.") at 4–8. The government responds that the election of new officers as a cure for corruption is at best a factual defense and that the Supplemental Complaint still alleges numerous irregularities and a "climate of intimidation and fear." Supp. Complaint ¶ 77; Gov.Supp.Mem. at 11.

The Supplemental Complaint, despite the election of new officers, still alleges significant problems at the District Council that make the District Council a necessary party. The District Council is properly included as a nominal defendant because it would be necessary to effectuate the relief sought by the government, *see International Brotherhood of Teamsters*, 708 F.Supp. at 1402, and it will not be removed from this case.

scheme," *Porcelli* at 1364, there need not be equal participation on the part of all a RICO enterprise's component parts. The companies excluded by the Second Circuit from the enterprise in *Porcelli*, while they "might well be forfeitable," *ibid.*, had no direct involvement of any degree in the racketeering activity. That cannot be said of the Benefit Funds, in the face of these allegations.

■■■ The Defendants also contend that the Local Unions should not be included in the District Council Enterprise because the racketeering acts at the Local Unions alleged by the plaintiff in paragraphs 45–76 of the Supplemental Complaint do not mention the Officer Defendants. Since the Court has concluded that the Officer Defendants had a duty to remedy corruption at the Local Unions, a violation of which may establish aiding and abetting liability, the Local Unions are properly included in the District Council Enterprise. In addition, the Officer Defendants are not merely officers of the District Council but are also officials of various Local Unions: Defendant McGuiness is president of Carpenters local 608; Defendant Zeidman is president of Local 2155; Defendant Devine is president of Carpenters Local 1456; Defendant McHale is "Business Agent Emeritus" of Carpenters Local 2287. Supp. Complaint ¶ 9. The Supplemental Complaint alleges wrongdoing by the Officer Defendants as District Council officers, as aiders and abettors of other District Council and Local Union officials, and as Local Union officers. Supp. Complaint ¶¶ 23–76. The District Council By–Laws provide that each Local Union will elect delegates to the District Council. By–Laws of the District Council § 15, Morvillo Aff., Exhibit C. To contend that the activities of the District Council are so distinct from the Local Unions which provide the Council's officers and whose delegates make up the Council is to strain credulity.

## C. Pattern of Racketeering Activity

Defendants argue that the government has failed to allege a sufficient nexus between the alleged pattern of racketeering activity and the District Council Enterprise. Defendants argue that the allegations of misconduct by Officer Defendant Devine in relation to the Benefit Funds are inadequate to support a pattern of racketeering activity in relation to the Benefit Funds. Defendants also argue that the allegations are not sufficient to support a finding that the District Council is part of the enterprise as the allegations against the Officer Defendants may predate their election as officers of the District Council. All of these defects, defendants contend, mean that the pleadings fail to establish the necessary "vertical relatedness" between the predicate acts and the enterprise. Def. Mem. 42–45.

In *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court undertook to identify and define the ingredients and boundaries of a "pattern of racketeering activity." Justice Brennan's opinion commanded only a 5–4 majority, but it represents the Court's most recent articulation of the governing principles. *H.J.* holds that a "pattern of racketeering activity" requires the combination of predicate acts related to each other and continuity of conduct. 492 U.S. at 239.

As for relatedness, the *H.J.* majority derived from Title X of the Organized Crime Control Act of 1970, of which RICO formed Title IX, the rule that to be related, predicate acts must have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901.

However, the Court continued, the relatedness of racketeering activities is not sufficient to satisfy § 1962's "pattern" element. "To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Ibid.* (emphasis in original). As to continuity, the *H.J.* majority wrote:

"Continuity" is both a closed- and open-ended concept, referring either to a

closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *See Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39 (CA3 1987). It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated. *See* S.Rep. No. 91–617, at 158.

*Id.* at 241–42, 109 S.Ct. at 2902 (emphasis in original).

The civil complaint in *H.J.* alleged that at different times over the course of at least a six-year period telephone company officers and employees gave members of a state regulatory commission bribes in order to obtain approval of unfair and unreasonable utility rates. The Court noted plaintiff's "claim that the racketeering predicates occurred with some frequency at least over a six-year period, which *may* be sufficient to satisfy the continuity requirement." *Id.* at 250, 109 S.Ct. at 2906 (emphasis added). The case was remanded to the district court for further proceedings consistent with the Court's opinion.

In *Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir.) (en banc), *vacated and remanded*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 *original decision adhered to*, 893 F.2d 1433 (2d Cir.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989), plaintiffs alleged that defendants made a number of material misrepresentations in an offering plan for the conversion of an apartment complex into condominiums. The plan was mailed to more than 800 addresses. The complaint alleged additional facts sufficient to justify an inference that defendants would in the future be making further, equally fraudulent amendments to the offering plan. The Second Circuit held these allegations sufficient to describe a pattern of racketeering activity. The en banc majority and the three dissenting judges in *Beauford* agreed that the concepts of "relatedness" and "continuity" were crucial; and, in a departure from prior Second Circuit authority, observed that "our analysis of relatedness and continuity has shifted from the enterprise element to the pattern element." 865 F.2d at 1391. That shift presaged the Supreme Court's analysis in *H.J.*, which had not yet been decided.

In *Beauford* the Second Circuit defined Congress' goal in defining "pattern of racketeering activity" as to exclude from the reach of RICO criminal acts that were merely "isolated" or "sporadic." Consequently, Judge Kearse wrote for the en banc majority, "we must determine whether two or more acts of racketeering activity have sufficient interrelationship and whether there is sufficient continuity or threat of continuity to constitute such a pattern." *Id.* 865 F.2d at 1391. The relatedness of acts may be shown by "their temporal proximity, or common goals, or similarity of methods, or repetitions." *Indelicato*, 865 F.2d at 1382. "[W]here the organization is legitimate, if the racketeering acts were performed at the behest of an organized crime group, that fact would tend to belie any notion that the racketeering acts were sporadic or isolated." *Id.* at 1384.

Defendants' argument that the racketeering acts of Officer Defendant Devine alleged to have been committed in regard to the Benefit Funds are not related to the enterprise is without merit. The actions of Devine while a trustee of the Benefit Funds form part of the pattern of racketeering that is allegedly going on throughout the District Council Enterprise. The government has alleged acts of corrup-

tion and extortion by the Officer Defendants at the Local Union, District Council and Benefit Fund levels. The allegations against Officer Defendant Devine allege that he took payoffs in connection with the Benefit Funds, Local Union 1456 and the District Council. Supp. Complaint ¶¶ 33–38. The fact that Devine is the only Officer Defendant named with regard to the Benefit Funds does not mean that his conduct is not part of a pattern and that the Benefit Funds are not part of the enterprise. As the Second Circuit held in *Indelicato*, 865 F.2d at 1384, the fact that an act is done at the behest of organized crime makes it likely that a pattern will continue. Here, the government has specifically alleged that one act of racketeering with regard to the Benefit Funds was done at the behest of Vincent "Jimmy" Rotondo and Vincent Gigante, members of the DeCavalcante and Genovese Organized Crime Families respectively. Supp. Complaint ¶ 34. The fact that Devine is also alleged to have committed the same types of racketeering as the other Officer Defendants undermines the argument that Devine's activities were isolated instances of conduct unrelated to the pattern of racketeering activity. *See Indelicato*, 865 F.2d at 1382. The allegations establish that Devine's activities were related to and a continuing part of the pattern of racketeering activity.

■■■ Defendants also contend that the allegations of a pattern of racketeering do not warrant the inclusion of the District Council in the District Council Enterprise. Defendants argue that it is not clear whether the Officer Defendants committed acts of racketeering while they were officers of the District Council. However, the Defendants admit that the allegations cover the periods of time when the Officer Defendants were officers of the District Council. Def.Mem. at 44. The numerous allegations of misconduct by the Officer Defendants that cover the period of time when they were officers or trustees of the District Council are adequate to include the District Council in the District Council En-

terprise. Supp. Complaint ¶¶ 23–24, 27–34, 36, 38. These acts demonstrate the kind of similarity of method and repetition that support an inference or relatedness are related and were continuing, *see Indelicato* 865 F.2d at 1382–83, so the pattern is properly alleged with regard to the District Council.

■■■ The Supplemental Complaint adequately alleges a pattern of racketeering activity on the part of the members of the District Council Enterprise. The Supplemental Complaint alleges a pattern of payoffs to District Council and Local Union officials and a continuing extortion of union member's rights. Supp. Complaint ¶¶ 23–77. The government has fulfilled the Supreme Court's holding that "a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902. The allegations in the Supplemental Complaint of a continuous series of related predicate acts extending over a period of years are adequate to establish a pattern of racketeering activity.

### III. Constitutional Issues
#### A. Vagueness

■■■ The defendants contend that the description of the District Council and several of its constituent elements as an "enterprise" under RICO is an unconstitutional application of the RICO statute and that RICO should be declared unconstitutionally vague.[11] The defendants argue that the statute provides no basis for citizens of normal intelligence to predict what conduct will be deemed a RICO "enterprise." Although the Second Circuit has explicitly held that § 1962(b) is not unconstitutionally vague, *United States v. Parness*, 503 F.2d 430, 442 (2d Cir.1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975), the defendants argue that decisions since that time have greatly expanded the scope of RICO. *See United States v.*

---

**11.** While defendants note in passing that their vagueness arguments could also be applied to the RICO term "pattern of racketeering activity,"

they confine their argument to the enterprise requirement.

*Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) and *H.J., Inc., supra.* The defendants argue that prosecutors and plaintiffs have unlimited discretion in designating what an "enterprise" is in any given case and thus can undertake multiple prosecutions. Def.Mem. at 52.

The defendants place great reliance on Justice Scalia's concurring opinion in *H.J. Inc.,* 492 U.S. at 251–256, 109 S.Ct. at 2906–09, in arguing that RICO is unconstitutionally vague. In that opinion Justice Scalia recounted the difficulty courts, including the Supreme Court, have had in defining a "pattern of racketeering activity" under RICO. Although there was no vagueness challenge before the Court in *H.J. Inc.,* Justice Scalia noted that because it has criminal applications RICO requires the certainty of criminal laws. Justice Scalia concluded by writing "[t]hat the highest Court in the land has been unable to derive from this statute anything more than today's meager guidance bodes ill for the day when that [constitutional] challenge is presented." 492 U.S. at 256, 109 S.Ct. at 2909.[12]

Due process requires "that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). As the Supreme Court recently held:

> Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk. Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the

case at hand; the statute is judged on an as-applied basis.

*Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 1857–58, 100 L.Ed.2d 372 (1988) (citations omitted).[13] Title 18 U.S.C. § 1961(4) defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

Subsequent to *H.J., Inc.,* this Court has explicitly held that the term "enterprise" is not unconstitutionally vague, *see United States v. Paccione,* 738 F.Supp. 691, 697–699 (S.D.N.Y.1990), and the Second Circuit has rejected Justice Scalia's concurrence in the organized crime context. *See United States v. Coiro,* 922 F.2d 1008, 1017 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991); *see also United States v. Pungitore,* 910 F.2d 1084, 1105 (3rd Cir.1990) (holding Justice Scalia's due process concerns expressed in *H.J. Inc.* not applicable in organized crime cases), *cert. denied,* — U.S. ——, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991). The enterprise alleged in the case at bar is similar to union organizations that have been held to be enterprises by other courts. *See Bonanno Organized Crime Family,* 683 F.Supp. at 1424. The fact that organized crime figures are involved in a RICO case means there is much less chance that the defendants will be surprised by the charges. In *Pungitore,* 910 F.2d at 1105, the Third Circuit wrote: "we have doubts that a successful vagueness challenge to RICO ever could be raised by defendants in an organized crime case." *See also United States v. Angiulo,* 897 F.2d 1169, 1180 (1st Cir. 1990) ("A person of ordinary intelligence could not help but realize that illegal activities of an organized crime family fall within the ambit of RICO's pattern of racketeering activity."), *cert. denied,* — U.S. ——, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990); *see also Indelicato,* 865 F.2d at 1384.

---

**12.** Justice Scalia's concurrence is of course just that and the majority in the case defined a "pattern" as consisting of the elements of relatedness and continuity. *See H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. at 2900.

**13.** Defendants challenge the First Amendment implications of plaintiff's requested relief, *see infra,* and also argue that many of the govern-

ment's Hobbs Act allegations are based on "guilt by association" and so implicate First Amendment freedom of association concerns. Def. Mem. at 55. As the discussion below concludes, the government's allegations about Defendants' activity do not implicate First Amendment concerns.

The fact that the defendants might not have known at the time of their unlawful activity which entities the government would allege were part of the District Council Enterprise does not mean that RICO is unconstitutionally vague. The Officer Defendants' alleged illegal activities, and their aiding and abetting of others' illegal activities, at all levels of the District Council Enterprise, at the Local Unions, the Benefit Funds and the District Council itself, make it quite proper that the government included those entities in the enterprise. A reasonable person cannot be surprised that his receipt of labor payoffs and abuse of position at the District Council, Benefit Funds and Local Unions, and similar activity by his cohorts, may mean that those entities are named as an enterprise in a racketeering indictment. *See Maynard,* 486 U.S. at 361, 108 S.Ct. at 1857–58. The defendants' arguments of vagueness in this labor racketeering and extortion case are particularly unavailing because of the alleged involvement of organized crime. *See Coiro,* 922 F.2d at 1017. The term "enterprise" is not vague as applied in this case, and hence neither is the RICO statute.

## B. First Amendment

The District Council argues that the inclusion of the new officers in the Supplemental Complaint violates the union members' First Amendment rights of association to elect the officers of their choice. The District Council contends that the government has not stated a compelling interest for its continued request for a new general election at the District Council and that a new election would violate members' First Amendment rights by allowing the government to oust the duly elected officers of the District Council. *See* Supp. Complaint at 58; Def.Supp.Mem. at 12–20.[14] The District Council argues that a new election is not the least restrictive method available to the government to remedy corruption at the District Council and that the government should instead proceed with criminal prosecutions. Def.Supp. Mem. at 21–23.

The Defendants also argue that the Supplemental Complaint's allegations of Hobbs Act extortion constitute guilt by association by accusing the defendants of associating with organized crime figures and thus violate the First Amendment right of freedom of association. The defendants argue that where the Supplemental Complaint alleges that the defendants associated with organized crime figures, *see* Supp. Complaint ¶ 77(c)(i–iv, x), it is attempting to prove the Officer Defendants' guilt by association with organized crime figures. The defendants argue that the First Amendment prohibits any attempts at finding individuals guilty solely on the basis of their associations. *See Healy v. James,* 408 U.S. 169, 186, 92 S.Ct. 2338, 2348, 33 L.Ed.2d 266 (1972). The defendants also contend that where unprotected activity takes place in the midst of constitutionally protected activity, the government regulation of unprotected activity must be precise. *See NAACP v. Claiborne Hardware,* 458 U.S. 886, 916, 102 S.Ct. 3409, 3427, 73 L.Ed.2d 1215 (1982). It is Defendants' contention that the complaint in this case fails to distinguish between constitutionally protected and unprotected activity. While the Officer Defendants acknowledge that they may have associated with unsavory individuals, they argue that they had to do so because those are the type of people District Council officials must associate with as they carry out their protected duties of representing their members' labor interests. Def.Mem. at 65.

14. The Defendants initially argued that part of the relief requested by the government, appointing a trustee to manage the affairs of the union, violated the First Amendment rights of the union members. By Stipulation and Order dated December 12, 1990, the government, the District Council and the Officer Defendants agreed to the appointment of Michael F. Armstrong, Esq., as Independent Counsel to investigate wrongdoing at the District Council. The Defendants had asked that the Court defer decision on the First Amendment issue concerning the requested relief because the stipulation had prevented the issue from becoming ripe for decision. *See* Letter of Robert G. Morvillo Dated March 8, 1991 ("Morvillo Letter") at 5. However, now that the government has added the names of the newly elected District Council officers to its Supplemental Complaint, the District Council argues that the relief the government seeks, particularly the demand for a new election, violates the First Amendment. Def.Supp.Mem. at 12.

The government responds that the addition of new officers to the Supplemental Complaint does not violate First Amendment rights because officers not accused of wrongdoing are able to go about their lawful business without interference. The government argues that attacks on the scope of relief are premature on a motion to dismiss and that new general elections are needed to break the climate of fear and intimidation at the District Council, particularly since officers are now selected by the delegates to the District Council and not the whole union membership. The government maintains that where criminal prosecutions have been unsuccessful in ending union corruption, civil RICO actions are an appropriate remedy. The government argues that the Hobbs Act allegations only single out unlawful conduct and do not impact on protected conduct. Gov.Supp. Mem. at 23–34; Gov.Mem. at 74–82.

■■■ The inclusion of the newly elected officers in the pleading does not impinge on the First Amendment rights of the union members. The Second Circuit has recently held that the supposed "stigma" of a racketeering suit deterring new members from joining political committees accused of past wrongdoing did not constitute a First Amendment violation. *See Jund v. Town of Hempstead,* 941 F.2d 1271, 1282–83 (2d Cir.1991). In *Jund,* the defendant political committees were found liable under civil RICO for extorting political contributions from town employees seeking promotions. The Second Circuit rejected defendants' contentions that RICO liability would stigmatize the committee members and impact the freedom of association rights of the members. *Id.* If the new officers are truly free of wrongdoing (the government does not even allege wrongdoing by two of the new officers), the pendency of this suit does not impact the First Amendment rights of union members.

■■■ Defendants' challenge to the government's requested relief is premature on a motion to dismiss. "The availability of any injunctive relief will depend on the government's proof, and the Court has broad equitable powers under 18 U.S.C. § 1964 to fashion any injunctive relief to avoid constitutional infirmities." *See Bonanno Organized Crime Family,* 683 F.Supp. at 1441–42. The propriety of the government's demand for a new election will be determined when the time comes, if it does, to fashion relief in this case.

■■■ Defendants' argument that the government should proceed by way of criminal prosecutions instead of civil RICO ignores the fact that civil RICO was specifically intended to help rid labor unions of persistent racketeering. *See United States v. Local 560, International Brotherhood of Teamsters,* 694 F.Supp. 1158, 1192 (D.N.J.1988), *aff'd without opinion,* 865 F.2d 253 (3d Cir.), *cert. denied,* 489 U.S. 1068, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1989). The civil RICO statute was designed to provide comprehensive relief for persistent patterns of racketeering such as the racketeering alleged in the Supplemental Complaint. *See United States v. International Brotherhood of Teamsters,* 931 F.2d 177, 186 (2d Cir.1991) (approving consent decree that provided for new elections). The Supplemental Complaint will not be dismissed on the basis that defendants presently voice a preference for criminal prosecutions.

■■■■ While the government responds that the part of the Supplemental Complaint alleging Hobbs Act violations only seeks to punish unlawful conduct in a way that does not impinge on protected conduct in accordance with *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), the First Amendment implications of punishing the defendants' alleged conduct here does not have to be analyzed against that standard. The defendants here are not alleged to have associated with organized crime figures for political, labor or social reasons but rather as part of a Hobbs Act conspiracy to extort the rights of union members. Supp. Complaint ¶ 77(c). As Judge Edelstein held in *International Brotherhood of Teamsters:*

the Government complaint does not seek to proscribe lawful union activity such as honestly representing workers and providing union benefits. The complaint addresses itself only to alleged violations of RICO, which are not protected by the

first amendment. The categories of allegedly protected activity challenged by the complaint cannot be analyzed in a vacuum. Purely political association, even with individuals who have a criminal history, is protected by the first amendment. Nevertheless, when such association is part of a plan to commit a crime it no longer is protected. Otherwise it is apparent that any RICO enterprise or conspiracy could never be prosecuted because they all involve 'association.' 'Freedom of association' is not, however, a talisman that will ward off all government attempts to proscribe or regulate activity. It is only *lawful* association that is protected, not association for a criminal or unlawful purpose. The IBT argument begs the question by asserting that the association alleged in the complaint is protected by the first amendment. If such association was innocent, and for the lawful, and laudable, purpose of political discussion, advancement of labor issues, or any other cognizable, protected purpose, the IBT will have ample opportunity to demonstrate that at trial.

708 F.Supp. at 1393–94 (emphasis in original). RICO is specifically targeted at organized crime and its infiltration of unions and does not attempt to proscribe lawful speech and association. *See Turkette*, 452 U.S. at 588–89, 101 S.Ct. at 2531–32; *United States v. International Brotherhood of Teamsters*, 941 F.2d 1292, 1297 (2d Cir.). The Supplemental Complaint does not implicate protected freedom of association and it will not be dismissed on that ground.[15]

### IV. Surplusage

The defendants argue that the Court should strike certain allegations from the complaint because they are prejudicial, irrelevant and would require the defendants to engage in burdensome discovery. Relying on *Bonanno Organized Crime Family*, 683 F.Supp. at 1430, n. 10, the defen-

dants argue that in particular the numerous indictments incorporated by reference in the complaint should be stricken.

Fed.R.Civ.P. 12(f) provides that the district court "upon motion made by a party ... may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." As this Court has held, "motions to strike 'are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter.'" *von Bulow By Auersperg v. von Bulow*, 657 F.Supp. 1134, 1146 (S.D.N.Y.1987) (*citing and quoting Schramm v. Krischell*, 84 F.R.D. 294, 298 (D.Conn.1979)); *See also Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529 (S.D.N.Y.1985). On a Rule 12(f) motion to strike, "it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976) (citations omitted).

### A. Former District Council Officers and Local Union Officers

Defendants argue that allegations in the Supplemental Complaint concerning acts by past officials of the District Council and acts by Local Union officials should be stricken because they are not chargeable to the Officer Defendants and because many occurred prior to 1983 when the Officer Defendants were elected. Def.Mem. at 78–82; Supp. Complaint ¶¶ 40–43; 45–77. The government responds that acts by others are chargeable to the Officer Defendants and that acts from before the election of the Officer Defendants are included to demonstrate the pervasive and longstanding corruption at the District Council. The Court has already concluded that acts by other District Council officials and Local Union officials may be chargeable to the Officer Defendants, on an aiding and abetting theory, assuming the elements are sufficiently proved. *See International Brotherhood of Teamsters*, 708 F.Supp. at 1401 (*citing Local 560*, 780 F.2d at 284).

---

**15.** This is not a situation where a complaint is so facially chilling to freedom of association that it must be dismissed. *See Franchise Realty Interstate Group v. San Francisco Local Joint Executive Board of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir.1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977). The defendants here will have an opportunity at trial to prove that their associations were legal and not extortionate.

Where acts that began before an officer is elected extend into the tenure of the new officer, that officer may be held to have aided and abetted those acts. *See Local 560,* 780 F.2d at 288.

 The government argues that since it has pled RICO conspiracy, acts of prior co-conspirators which predate the tenure of the Officer Defendants can be used to show the scope of the conspiracy and that defendants knowingly joined the conspiracy. Under familiar principles of conspiracy law, the Officer Defendants and the Individual Defendants can be held liable for the acts of other co-conspirators even if the acts occurred before they joined the conspiracy. *See United States v. Cervone,* 907 F.2d 332, 344 (2d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 680, 112 L.Ed.2d 672 (1991); *United States v. Friedman,* 854 F.2d 535, 562 (2d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989); *Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1493 (D.C.Cir.1989); *see also Hecht,* 897 F.2d at 25. The allegations of the Supplemental Complaint concerning wrongdoing prior to the election of the Officer Defendants will not be stricken from the Supplemental Complaint.

### B. Hobbs Act Allegations

 The defendants argue that the allegations of violence at the District Council and Local Unions alleged by the government in its Hobbs Act allegations should be removed from the complaint as "immaterial, impertinent, or scandalous matter" under Fed.R.Civ.P. 12(f). Def.Mem. at 82–85. However, an atmosphere of intimidation and fear, particularly when there is organized crime involvement, can help facilitate a Hobbs Act extortion. *See Local 560,* 780 F.2d at 278–279, 283–86. The general allegations of violence at the Local Unions are appropriate here where it may be impossible for the government to pinpoint who committed the acts of violence. The government is entitled to prove the atmosphere at the union and its contribution to the Hobbs Act extortion.

### C. Dismissed Indictment Against Irving Zeidman

 The defendants contend that the allegation against Irving Zeidman contained in paragraph 32 should be stricken because it is based exclusively on a state court indictment that was dismissed. Defendants argue in the alternative that the allegation should be amended to allege directly that Zeidman engaged in wrongdoing, rather than relying on a dismissed indictment. Def.Mem. at 85. Paragraph 32 of the Supplemental Complaint does allege directly that Zeidman received payoffs but it also refers to the dismissed indictment. In paragraph 9(b) the government acknowledges that the indictment was dismissed. The incorporation by reference of the indictment is not prejudicial but instead simply serves to describe the government's allegations against Zeidman. The government alleges that Zeidman took illegal payoffs on numerous occasions and the indictment simply spells out those occasions. The indictment carries no prejudicial weight merely because it was dismissed and is now incorporated in this complaint.

### D. Allegations of "Associations"

The defendants ask that the allegations in paragraph 77 alleging that certain defendants, District Council officials, Local union officials and members and others have associated with organized crime figures be stricken because these associations are immaterial. The defendants contend that these allegations attempt to show "guilt by association" and do not lay out causal connections among all of the associations and the alleged wrongdoing. Def.Mem. at 86. However, as earlier sections in this opinion have held, these associations are legitimately considered in the RICO and Hobbs Act contexts, *see United States v. Russo,* 708 F.2d 209, 214 (6th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 487, 78 L.Ed.2d 682 (1983), and will not be stricken as prejudicial. The proof will demonstrate whether these allegations are true and whether they state a cause and effect relationship.

### E. Allegations Concerning the Benefit Funds

The defendants take issue with the allegation that the Benefit Funds "are held

and controlled by the District Council." Supp. Complaint ¶ 18. Instead, the defendants argue, the Benefit Funds are controlled by the trustees of each fund, five of whom are employer representative and five of whom are union representatives. The defendants argue that this structure means that the District Council does not "control" the Benefit Funds. The defendants contend that the inclusion of the Benefit Funds in this action absent any "substantial allegation of wrongdoing" only hurts the reputation of the Benefit Funds and their trustees.

The defendants' argument ignores the fact that the complaint alleges that one of the Officer Defendants, Frederick W. Devine, illegally accepted things of value in connection with his duties concerning the Benefit Funds. Supp. Complaint ¶¶ 33–34. While these allegations do not conclusively establish that the District Council "controls" the Benefit Funds, they are adequate to make the Benefits part of the District Council Enterprise. These allegations are also adequate for purposes of the Supplemental Complaint and the defendants can later attempt to prove that there is in fact no relationship among the District Council and its Benefit Funds. *See Lipsky,* 551 F.2d at 893 (evidentiary disputes particularly inappropriate for resolution on Rule 12(f) motion to strike). The allegations concerning the Benefit Funds will not be stricken from the Supplemental Complaint.

### ORDER

The Defendants' motions to dismiss the Supplemental Complaint are denied in all respects. Counsel for the parties are directed to attend a status conference in the case on December 10, 1991 at 4:30 p.m. in Room 307 of the United States Courthouse.

It is SO ORDERED.