UNITED STATES of America,

v.

C. Eugene DEFRIES, et al., Defendants.

Crim. No. 93–117.

United States District Court,
District of Columbia.

July 1, 1994.

Stuart A. Levey, Miller, Cassidy, Larroca & Lewin, Washington, DC, for Clayton Eugene Defries.

Michele A. Roberts, Washington, DC, for Clyde E. Dodson.

Richard Anthony Hibey, Anderson, Hibey & Blair, Washington, DC, for Reinhold Schamann.

Judith Lynne Wheat, Cacheris & Treanor, Washington, DC, for Claude W. Daulley.

Jeffrey Todd Green, Sidley & Austin, Washington, DC, for Alexander C. Cullison.

Donald Thomas Bucklin, Squire, Sanders & Dempsey, Washington, DC, for Karl M. Landgrebe.

Stuart Fries Pierson, Washington, DC, for Donald K. Masingo.

Penny Marshall, Federal Public Defender for D.C., Washington, DC, for Michael A. Ribera.

James E. Sharp, Paul Lawrence Knight, Sharp & Lankford, Washington, DC, for George Butler, Jr.

Henry Winchester Asbill, Asbill, Junkin & Myers, Chtd., Washington, DC, for William M. Fast.

Thomas E. Scott, Davis, Scott, Weber & Edwards, Miami, FL, for Walter J. Browne.

James E. Sharp, Paul Lawrence Knight, Sharp & Lankford, Washington, DC, for Thaddeus Kedzierski.

Adam S. Hoffinger, Schwalb, Donnenfeld, Bray & Silbert, P.C., Jonathan Seth Zucker, Washington, DC, for Durwin W. Davis.

Jeffrey Todd Green, Sidley & Austin, Washington, DC, for Michael A. Baker.

Steven Carl Tabackman, Perkins & Coie, Washington, DC, for Vincent T. Oliveri.

Francis Darron Carter, Carter & Varrone, Washington, DC, for Paul T. Reyburn.

Daniel Saleem Seikaly, Sr., U.S. Atty's. Office, Sotiris A. Planzos, Stephen Kelly, Richard G. Convertino, U.S. Dept. of Justice, Crim. Div., Washington, DC, for U.S.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

In this 10–count indictment the government charges 15 former union officials with multiple acts of conspiracy, corruption and racketeering in seizing control of the union and exercising the authority so acquired for their personal benefit.[1] Briefly summarized, the indictment alleges that from approximately September, 1984, through January, 1991, the defendants fraudulently procured their election and re-election to union offices, and, once in power, so managed the affairs of the union as to enrich themselves at union expense and otherwise to their advantage.

Four counts charge ten of the defendants with mail fraud in violation of 18 U.S.C. §§ 1341 and 1346 on two dates in March, 1988, in connection with their alleged falsification of ballots cast by the union membership in a referendum conducted on a proposed merger with another union; the falsification of ballots cast for the election of national delegates and mailed in October, 1989; and the falsification of ballots mailed in October, 1990, for the election of union officers.[2] The defendants so charged have moved to dismiss those counts on the authority of *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987).

1. A sixteenth defendant is now deceased.

2. Counts Three and Four, Count Six, and Count Seven, respectively.

3. Less than five months after *McNally*, the Supreme Court affirmed the conviction under 18 U.S.C. § 1341 of a financial columnist who was found guilty of defrauding his employer, the *Wall Street Journal*, by disclosing his investment advice in advance of publication to a collaborating stockbroker who traded profitably for them both on the information. *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). The Supreme Court held that the "prop-

## I.

Title 18 U.S.C., § 1341, declares it to be a federal crime to use the mails for the purpose of executing "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." It has been employed by the government on myriad occasions in the past to prosecute both public and private officials who exploited their offices for personal gain. In June of 1987, however, the Supreme Court decided the *McNally* case, reversing convictions of state officers who had made mailings in connection with a scheme to procure kickbacks from insurance underwriters to whom they had steered state business, but at no proven loss to the state. The Supreme Court held that the statute did not purport to criminalize generally dishonest conduct depriving the citizenry of their intangible right to good government, concluding that § 1341 was addressed, as a matter of legislative intent, to deceptions and false promises designed to cheat the victims of "property rights." 483 U.S. at 360, 107 S.Ct. at 2881.[3]

## II.

■ Counts Three and Four at issue here allege that the defendants engaged in a scheme or artifice to "deprive members [of the union] of their property rights to vote and to participate in fair and honest elections," and to deprive the union itself of the "ballots" (presumably the legitimate votes of its members in good standing) regarding the 1988 merger referendum. (Indictment, ¶ 88). Counts Six and Seven allege a scheme to

erty rights" protected by § 1341 were not limited to tangible property; "confidential information" to which the victim has an "exclusive right" is a species of "property." Nor was it necessary that the victim be shown to have sustained a measurable loss. 484 U.S. at 25–26, 108 S.Ct. at 320–21.

Almost simultaneously with the *Carpenter* decision, § 1346 was added to Title 18 of the U.S.Code, declaring that a mail fraud prosecution could be predicated upon a "scheme or artifice to deprive another of the intangible right of honest services."

deprive union members of their "right to democratic participation in [union] affairs ... including the right to vote in secret and to participate in a fair and honest election [and] to the honest services of their union officers ..." in connection with the 1989 and 1990 elections. (*Id.,* ¶¶ 98, 104).

Defendants contend that, simply stated, none of those interests represent the "property rights" contemplated by *McNally* as enjoying protection under § 1341. Hence, Counts Three and Four, and Counts Six and Seven do not, according to defendants, charge offenses upon which they can be brought to trial. "Property rights," say the defendants, possess "minimum, irreducible characteristics" that separate property interests from all others; namely, they must have pecuniary value; they must be capable of ownership; and they must be transferrable. (Memorandum of Law in Support of Defendants' Motion, pp. 4–10).

The government responds that the integrity of any labor union's electoral process is guaranteed to its members by the union's own constitution and by-laws, and by the Labor Management Reporting Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411 *et seq.* (1988). It cites numerous cases—all, unfortunately, civil cases—decided under the LMRDA that speak of the rights of union members to participate in union affairs as being "economic," or "a source of wealth," or a means to a "livelihood." The government also analogizes to Hobbs Act cases, 18 U.S.C. § 1951 (1988), under which even allegations of criminal wrongdoing have been sustained against the contention that rights extorted from union members by threats or violence were not "property." *See e.g., United States v. International Brotherhood of Teamsters,* 708 F.Supp. 1388, 1397–99 (S.D.N.Y.1989).[4]

There are, however, obvious dangers presented for a lower court in assessing the implications of the *McNally* doctrine in a mail fraud prosecution by drawing upon learning from other lower court cases, decided under statutes other than 18 U.S.C. § 1341 (and for other purposes), and, in particular, cases antedating *McNally.* The Supreme Court decided *McNally* under § 1341, the very mail fraud statute at issue here, and it did so substantially upon what it discerned to be Congress' legislative intent. Moreover, there are at least three post-*McNally* circuit court decisions holding *McNally* to have effectively overruled older precedent allowing prosecutions under § 1341 for election frauds such as that charged here where the "victims," i.e., the bodies politic, had been deprived of no more than a fair election.[5] There are, apparently, no contrary decisions.

Elsewhere in the Indictment (Count Five), five of the defendants are charged with embezzlement, aided and abetted by others, in that they allegedly devised a plan to make, and then purported to authorize, exorbitant lump sum "severance" payments to themselves in an aggregate amount of nearly $2 million. The ballots of the union members whose votes were allegedly usurped by the defendants in the 1988 merger referendum may hypothetically have enabled them to accomplish it. If so, the ballots were of immense value, and as assuredly "property" in the *McNally* sense, as, for example, electronic access cards that enable withdrawals to be made from depositors' bank accounts. They were, literally and figuratively, the keys to the union treasury.

But the government does not allege the connection. Counts Three and Four allege only that the mail fraud with which the defendants are charged was intended to deprive the union and its members of a regular election in accordance with the union's constitution and by-laws. To be sure, the concept of an untainted election is less ambiguous than the notion of "good government" which the Supreme Court dismissed in *McNally* as

---

4. *But see United States v. District Council,* 778 F.Supp. 738, 755 (S.D.N.Y.1991).

5. In *United States v. Gordon,* 836 F.2d 1312 (11th Cir.1988) a conviction based upon the mailing of fraudulent absentee ballots was vacated by the court of appeals on rehearing after having been affirmed prior to *McNally.* In *Ingber v. Enzor,*

841 F.2d 450 (2d Cir.1988) the Second Circuit affirmed the district court's award of similar relief on a motion made pursuant to 28 U.S.C. § 2255. *Accord United States v. Townsley,* 843 F.2d 1070 (8th Cir.1988). This Court perceives no material distinction in the fact that these cases involved elections to public office.

unable to claim protection under § 1341. But it still partakes insufficiently of the qualities of property in the *McNally* sense in the opinion of three circuit courts of appeals. *See Supra,* note 6. This Court is not disposed to take issue with them, and Counts Three and Four of the Indictment will be dismissed.

### III.

■ The operative dates for the offenses with which defendants are charged in Count Six are October 1, 1989, to November 30, 1989, and, in Count Seven, October 1, 1990, through December 31, 1990. Twice more, after 1988, the government alleges, the defendants corrupted the union's election processes (using the mails to do so) to produce results satisfactory to them in the selection of delegates to the national convention in 1989 and union officers in 1990.

By 1989, however, 18 U.S.C. § 1341 did not stand alone in defining the interests protected when *McNally* was decided. In 1988, in reaction to the *McNally* decision, Congress enacted § 1346, adding "the intangible right of honest services" to the otherwise unenumerated "property" rights it was a crime to deprive another of by a scheme or artifice to defraud using the mails.

Defendants argue that, insofar as the "services" expected of them in relation to union elections, there were none: union by-laws of the time required the union president to "designate an Impartial Administrator to supervise the conduct of the election." The "duties" of the "Impartial Administrator" included the distribution, collection, and tallying of the votes, and "such other measures as he may deem necessary to assure a fair and impartial · election." If the elections were fraudulent, defendants contend, the fault must lie with the "Impartial Administrator."

The government responds that the LMRDA, specifically, 29 U.S.C. § 501(a), provides, in pertinent part, that the "officers ... of a labor organization occupy positions of trust in relation to [the] organization and its members as a group."

It is therefore the duty of each such person ... to hold its money and property solely for the benefit of the labor organization and its members to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder. . . .

29 U.S.C. § 501(a). The government also quotes from provisions of the union constitution and by-laws establishing criteria for voting procedures within the union, including a secret ballot and a secure depository for the ballots while the election is in progress to prevent tampering. And it cites to numerous civil cases holding, in various contexts, that union officers are fiduciaries and obliged to act as such in matters affecting the union and its members generally, not merely with respect to its money and property.[6]

It is unnecessary here, however, to decide whether the supervision of the union elections (and the attendant responsibility for their legitimacy) is a delegable function of union officers, or whether the officers' fiduciary duties extend beyond faithful stewardship of the union's tangible assets. Since 1988, § 1346 has expressly declared "honest services" to be an interest protected by the mail fraud statute, and it appears to the Court that the "honest services" any organization is entitled to expect of its officers includes, at a minimum, that *the officers themselves* refrain from corrupting the organization's election proceedings, which is precisely what the government charges the defendants with here.

For the foregoing reasons, therefore, it is, this 1st day of July, 1994,

ORDERED, that defendants' motion to dismiss Counts Three and Four is granted; and it is

FURTHER ORDERED, that the motion to dismiss Counts Six and Seven is denied.

---

**6.** *E.g., Stelling v. International Brotherhood of Electrical Workers,* 587 F.2d 1379, 1386 (9th Cir. 1978); *Johnson v. Nelson,* 325 F.2d 646 (8th Cir.1963).