United States v. Kattar                CV-95-221-JD   12/31/96
                 UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE

United States of America

        v.                              Civil No. 95-221-JD

George T. Kattar, et al.


                            O R D E R


     The plaintiff, the United States, brought this action

against defendants George T. Kattar and Phyllis Kattar in their

individual capacity and in their capacity as trustees, along with

defendants Mary Abdoo, George P. Kattar, and Kevin Kattar, of the

Seven Children Trust, and against defendant Seven Children Trust

and defendant Town of Meredith, New Hampshire, requesting that

the court reduce certain tax assessments against George T. and

Phyllis Kattar to judgment; declare that the United States has a

valid and existing lien against the property of George T. and

Phyllis Kattar; set aside a 1972 conveyance of real property from

Phyllis Kattar to the Seven Children Trust as a fraudulent

conveyance; declare that the Seven Children Trust is the nominee

and alter ego of defendants George T. and Phyllis Kattar; and

authorize the foreclosure of a lien on the real property conveyed

to the trust.  Before the court is the motion for judgment on the

pleadings of George T. and Phyllis Kattar, the trustee

defendants, and the Seven Children Trust (document no. 16).

## Background[1]

This case arises out of tax assessments made against George T. and Phyllis Kattar ("the Kattars") on April 29, August 23, and September 26, 1985 for unpaid federal income taxes for the years 1963, 1964, 1965, 1966, 1967, 1970, and 1971 in the amounts of $12,393.77, $19,382.86, $38,309.03, $38,453.95, $35,290.76, $26,165.57, and $18,586.00, respectively.[2] After penalties and interest, the unpaid balance on these assessments exceeds $600,000.

The assessments were made approximately thirteen years after George T. Kattar's April 1972 indictment for tax evasion and the June 1972 transfer of the Kattars' Meredith, New Hampshire, residence (known as "Clovelly") to the Seven Children Trust, for which the Kattars and George T. Kattar's sister, Mary Abdoo, at the time served as trustees. In December 1973, George T. Kattar plead guilty to two counts of subscribing to federal income tax returns that he did not believe to be correct. In 1974, the Kattars petitioned the United States Tax Court to contest

---

1The facts relevant to the instant dispute are either not in dispute or have been alleged by the plaintiff.

2Assessments for 1963, 1964, and 1965 were made on September 26, 1985. Assessments for 1966, 1967, and 1970 were made on April 29, 1985. The assessment for 1971 was made on August 23, 1985.

deficiencies for taxable year 1970, and in 1975, petitioned the court to contest deficiencies for taxable years 1963-1968.[3]

In a memorandum opinion filed July 26, 1984, the tax court found that Kattars had made underpayments for taxable years 1963-1967, for which years the Kattars had filed joint tax returns, and that the government had established by clear and convincing evidence that these underpayments were fraudulent. Accordingly, the court found that the general three-year statute of limitations for the government to file tax assessments for taxable years 1963-1967 had been lifted under I.R.C. § 6501(c)(1).[4] Kattar v. Commissioner, 48 T.C.M. (CCH) 629, 641, 642 (1984). In the same opinion, the court sustained the tax commissioner's determination of a deficiency for 1970, for which year the Kattars also had filed a joint return, and found no evidence of fraud for taxable year 1968. The court ordered that "decision[s] will be entered" to reflect its conclusions concerning the Kattars' tax liabilities. Id. at 642. These

_____

[3]The tax court did not consider the Kattars' liabilities for taxable year 1971.

4Section 6501(c)(1) provides that "[i]n the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time." 26 U.S.C.A. § 6501(c)(1) (West Supp. 1996).

3

decisions were entered on December 11, 1984.

## Discussion

The Kattars and the trustee defendants (hereinafter "the defendants") seek dismissal of the government's claims under Fed. R. Civ. P. 12(c), asserting that the government's claims are barred by the applicable statutes of limitations, by the equitable doctrines of laches and estoppel, and by the Due Process Clause of the Fifth Amendment. The court addresses these arguments below, seriatim.

The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion. Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 182 (7th Cir. 1986). In both cases, the court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (motion to dismiss under Fed. R. Civ. P. 12(b)(6)). In making its inquiry, the court must accept all of the factual averments contained in the complaint as true, and draw every reasonable inference in favor of the plaintiffs. Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992) (Rule 12(b)(6) motion);

4

Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991) (Rule 12(c) motion).  Great specificity is not required to survive a Rule 12 motion.  "[I]t is enough for a plaintiff to sketch an actionable claim by means of 'a generalized statement of facts.'"  Garita, 958 F.2d at 17 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990)).  In the end, the court may not enter judgment on the pleadings unless it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief.'" Santiago de Castro, 943 F.2d at 130 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988).

I.  The Assessments are Not Barred by the Statute of Limitations

A.  Taxable Years 1963-1967

The defendants first argue that the government's assessments against Phyllis Kattar with respect to taxable years 1963-1967 are untimely because the tax court never found fraud against her. The government disputes the defendants' characterizations of the tax court's holding, and contends that the defendants are estopped from contesting any matters that were or could have been litigated before the tax court.

5

The court's review of the defendants' argument reveals a misunderstanding not only of the effect of the tax court's holding but of the nature of a motion for judgment on the pleadings. Although a defendant may raise an affirmative defense based on the statute of limitations in a Rule 12 motion, such a motion can only be granted if, after consideration of the complaint and other materials properly considered on a motion to dismiss, it is clear that the action is barred by the applicable statute of limitations. 2A Moore's Federal Practice at ¶ 12.10, at 12-119 (1996); see Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (court can consider, inter alia, items in public record in Rule 12 motion). Because the government is not required to plead fraud as an element of its claim, such a conclusion cannot necessarily be drawn from its complaint in the instant case. In fact, an examination of the tax court's opinion reveals that the only conclusion to be drawn is that Phyllis Kattar cannot take advantage of the three-year statute of limitations for taxable years 1963-1967. Regardless of his or her involvement in fraudulent conduct, a party who files a joint return deemed to be fraudulent is subject to § 6501(c)(1)'s suspension of the three-year statute of limitations. See, e.g., Ballard v. Commissioner, 740 F.2d 659, 663 (8th Cir. 1984). Because the tax court, a court of competent jurisdiction, has determined that the returns

6

at issue were fraudulent within the meaning of § 6501(c)(1), the defendants are barred from relitigating the matter in this forum and, accordingly, from asserting the statute of limitations as a defense to the claims against Phyllis Kattar for taxable years 1963-1967.  See Commissioner v. Sunnen, 333 U.S. 591, 598 (1948); see, e.g., Baptiste v. Commissioner, 29 F.3d 1533, 1538 (11th Cir. 1994) (taxpayer barred from relitigating issue decided against him in previous tax court proceeding).  Accordingly, the motion to dismiss the action as to Phyllis Kattar based on taxable years 1963-1967 is denied.

B.  Taxable Year 1970

The defendants next contend that the government's claim based on taxable year 1970 must be dismissed because the suspension of three-year statute of limitations as to this claim was lifted 273 days[5] after the tax court filed its opinion, and because three years had run against the statute before the 1970 assessment was made.  The government contends that the 1970 assessment was timely because calculation of the date that the

_____

[5]The defendants acknowledge that the statute of limitations was tolled for ninety days to permit the filing of an appeal and for sixty days thereafter, as described infra, and for an additional 123 days pursuant to an agreement between the Kattars and the government, for a total of 273 days.

7

suspension was lifted is not based on the date the tax court's opinion was filed, but, rather, on the date its decision was entered.

As a general matter, federal income tax assessments must be made within three years of the filing of a return. U.S.C.A. § 6501(a) (West Supp. 1996). However, this period is suspended during the pendency of proceedings before the United States Tax Court until sixty days after the "decision of the tax court becomes final." Id. § 6503(a)(1) (West Supp. 1996). As a party has ninety days to file an appeal of a tax court's decision, see id. § 7483(a) (West 1989), and a decision is not final until an appeal is no longer available, the three-year statute of limitations is suspended for 150 days following the entry of an unappealed tax court decision.

In the case at bar, the tax court filed a memorandum opinion on July 26, 1984. However, the opinion expressly ordered that a decision "will be entered" in favor of the government concerning the Kattar's 1970 tax liabilities, and the record is clear that this decision was entered on December 11, 1984. As the Kattars did not appeal the tax court's decision, the suspension of the statute of limitations could not have been not lifted at the earliest until 150 days after December 11, 1984, or May 10, 1985.

Here, the government made its assessment against the Kattars

8

for taxable year 1970 on April 29, 1985 -- within the 150-day "grace period" following the entry of a final decision by the tax court. It follows that no additional time ran against the statute of limitations after the completion of their litigation before the tax court. Although it is not clear from the record whether three years had run against the statute of limitations before the Kattars petitioned the tax court with respect to taxable year 1970, the court need not undertake this inquiry. Not having raised the issue of the timeliness of the 1970 deficiency before the tax court, the Kattars cannot now claim that the statute of limitations ran for three years prior to their filing a petition. See Sunnen, 333 U.S. at 598; United States v. Bryant, 15 F.3d 756, 758 (8th Cir. 1994) (taxpayer estopped from asserting defenses that were or could have been litigated before tax court). Their claim that the assessment for taxable year 1970 is untimely fails.

C. Taxable Year 1971

The defendants' third contention is that the assessment for taxable year 1971, which was made on August 23, 1985, was untimely. In response to this contention, the government has produced a document, apparently executed by the Kattars, that it claims extends the statute of limitations for any assessment

9

based on taxable year 1971 until 150 days after the mailing of a notice of deficiency.  See 26 U.S.C.A. § 6501(c)(4) (authorizing agreements between Secretary of Treasury and taxpayer to extend statute of limitations by agreement).  They further claim that the assessment was made within this 150-day period.  Although the court will not address the authenticity of the document produced by the government or speculate as to its legal effect without granting the defendants an opportunity to be heard on these issues,[6] it is satisfied from the government's proffer of evidence that there may be some theory under which the government may prevail on the defendants' statute of limitations argument.  Accordingly, the defendants' motion to dismiss the government's claims based on the assessment for taxable year 1971 is denied.

II.  The Government's Fraudulent Conveyance Claim is Not Barred by the Statute of Limitations

The defendants next contend that the government's attempt to set aside the conveyance of Clovelly to the Seven Children Trust is untimely under the New Hampshire enactment of the Uniform Fraudulent Transfer Act and therefore should be dismissed.  The government asserts that state statutes of limitations are not

---

[6]The court declines to convert the instant motion into a motion for summary judgment based on materials that have been submitted by the nonmoving party and to which the defendants have not responded.

10

applicable to the United States, and that its attempt to set aside the conveyance is timely under 26 U.S.C. § 6502(a)(1), the applicable federal statute of limitations.

The United States may bring an action in federal court to enforce a federal tax lien. U.S.C.A. § 7403(a) (West 1989). In so doing, it may ask a federal court to set aside a fraudulent conveyance. See, e.g., United States v. Bryant, 15 F.3d 756 (8th Cir. 1994). Although federal courts apply the substantive law of the state in which the property is to be seized to determine whether a conveyance of that property is fraudulent, see Commissioner v. Stern, 357 U.S. 39, 42-45 (1958), it is well settled that the federal government is not bound by state statutes of limitations, United States v. Summerlin, 310 U.S. 414, 416 (1940); United States v. Bacon, 82 F.3d 822, 823 (9th Cir. 1996). Accordingly, the court must consider the applicable federal statute of limitations to determine whether the government's action is timely.

In 1990 Congress amended 26 U.S.C. § 6502(a) by extending from six to ten years the time for the government to file a civil action to collect on a tax assessment. The statute now provides in relevant part:

> Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or proceeding in court, but only if the levy is

11

> made or the proceeding begun--
>
> > (1) within 10 years after the assessment of
> > the tax . . . .

26 U.S.C.A. § 6502(a) (West Supp. 1996). The amendment applies to taxes assessed after November 5, 1990 and to taxes for which the period for collection had not expired as of November 5, 1990. Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508 § 11317(a), 104 Stat. 1888-458.

In the instant case, the earliest assessments upon which the government seeks to collect were made on April 29, 1985. Because these assessments were less than six years old and thus not expired as of November 5, 1990, the 1990 amendment to § 6502(a) extended the time to file a civil action based on these assessments until April 29, 1995. Because the government filed its complaint on April 27, 1995, the action is not barred by the federal statute of limitations.

The defendants nonetheless contend that the action is untimely because the Uniform Fraudulent Transfer Act ("UFTA"), N.H. Rev. Stat. Ann. § 545-A (Supp. 1995), contains a "claims extinguishment" provision, which, unlike a statute of limitations, purports to extinguish most claims for relief for fraudulent conveyances unless the claim is brought within four years of the transfer. The argument is unavailing. As the Ninth Circuit has noted, the claims extinguishment provision of the

12

UFTA "appears to be a dressed-up statute of limitations, crafted to circumvent the rule of Summerlin." Bacon, 82 F.3d at 824 n.2. In this regard, the provision differs in form, but not in substance, from a statute of limitations. Accord United States v. Stoecklin, 858 F. Supp. 167, 168 (M.D. Fla. 1994). Compare United States v. Vellalos, 780 F. Supp 705, 707-08 (D. Hawaii 1992) (federal government subject to claims extinguishment provision of UFTA because Summerlin applies to common law right to collect on debt, but not to "carefully delineated state statutory right" subject to extinguishment upon expiration of prescribed time period), aff'd on other grounds, 990 F.2d 1265 (table) (9th Cir. 1993) with United States v. Zuhone, No. 96-1078, 1996 WL 437509, at *3 (May 29, 1996, C.D. Ill.) (declining to follow Vellalos in light of the "abundant opposing authority") and Stoecklin, 858 F. Supp. at 168 (disagreeing with Vellalos as inconsistent with Summerlin).

Moreover, even if the federal government could be subject to the UFTA's claims extinguishment provision, the provision is inapplicable to allegedly fraudulent transfers that occurred prior to the enactment of the UFTA.[7] In Bacon, the Ninth Circuit declined to apply the UFTA retroactively to bar the United States from setting aside a conveyance that had occurred prior to

---

[7]New Hampshire enacted the UFTA in 1988.

13

Washington's enactment of the UFTA. 82 F.3d at 824 (citing Landgraf v. USI Film Prods., 511 U.S. 244 (1994)). Instead, the court turned to the law in effect at the time of the conveyance, the Uniform Fraudulent Conveyance Act ("UFCA"). Id. at 824-25 (citing Karras v. Karras, 16 F.3d 245, 246-47 (8th Cir. 1994) (applying South Dakota's repealed UFCA)). Because the statute of limitations governing Washington's UFTA was inapplicable to the federal government under Summerlin, the Bacon court found that the only applicable limitations period was that imposed by 26 U.S.C. § 6501(a)(1). 82 F.3d at 825.

Here, the allegedly fraudulent transfer at issue took place in 1972, at which time the UFCA was still in effect in New Hampshire. Because this statute contains no claims extinguishment provision, any limitations period for actions arising thereunder is inapplicable to the United States under Summerlin. It follows that, as in Bacon, the current action is subject only to the ten-year statute of limitations of 26 U.S.C. § 6502(a)(1). As the government's fraudulent conveyance claim falls within the limitations period of this provision, the action is not untimely.

III.  Remaining Arguments

The defendants contend that the government's claims are barred by the equitable doctrines of laches and estoppel and by the Due Process Clause of the Fifth Amendment. However, in

14

support of their argument they point only to the difficulty of complying with the government's discovery requests dating back more than thirty years and the general egregiousness of the government's conduct. Even assuming arguendo that the defenses of laches or estoppel are available against the United States or that the defendants can state a colorable due process defense, the court finds their arguments uncompelling, particularly in the context of a motion for judgment on the pleadings.

Conclusion

The defendants' motion for judgment on the pleadings (document no. 16) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

December 31, 1996
cc: George P. Eliopoulos, Esquire
    Steven M. Gordon, Esquire
    Albert F. Cullen Jr., Esquire
    Philip T. McLaughlin, Esquire

15